# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**THOA T. NGUYEN, ET AL.**                                      CIVIL ACTION

**VERSUS**

**LOUISIANA STATE BOARD OF**                    NO.: 14-00080-BAJ-RLB
**COSMETOLOGY, ET AL.**

## RULING AND ORDER

Before the Court are **Defendant Celia R. Cangelosi's Rule 12(b)(6) and 12(b)(1) Motions to Dismiss and Special Motion to Strike Plaintiffs' First Amended and Supplemental Complaint (Doc. 46)**. Defendant Cangelosi (also, "Defendant") moves to dismiss the **First Amended and Supplemental Complaint for Injunctive Relief and Damages (Doc. 44)** of Plaintiffs Thoa T. Nguyen, et al., pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), moves to strike allegations against her pursuant to Rule 12(f), and makes a Special Motion to Strike under Louisiana Code of Civil Procedure ("La. C.C.P.") article 971. Plaintiffs oppose Defendant Cangelosi's Motions to Dismiss and Motions to Strike. (Docs. 47, 48). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Additional briefing is not required, and oral argument is not necessary. For reasons explained below, Defendant's Rule 12(b)(1) Motion to Dismiss, Rule 12(b)(6) Motion to Dismiss, Rule 12(f) Motion to Strike, and Special Motion to Strike Under La. C.C.P. art. 971 are all **DENIED**.

1

## I.    BACKGROUND

Plaintiffs are Vietnamese- and Asian-American nail salon owners in Louisiana who allege they have been "subjected to disproportionate and heightened inspections" by the Louisiana State Board of Cosmetology ("LSBC")[1] based on their ethnicity and race. (Doc. 1 at ¶ 19). Plaintiffs[2] filed suit against several defendants, including Defendant Celia R. Cangelosi, who is being sued in both her individual and official capacities. Plaintiffs assert claims of (1) racial discrimination in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution, and (2) false imprisonment. Plaintiffs pray for relief in the form of, *inter alia*, declaratory judgment that defendants violated Plaintiffs' rights; an injunction enjoining defendants from further discriminatory practices; an injunction ordering defendants to reinstate Plaintiffs' business licenses; an injunction ordering defendants to develop and institute a training program; and costs, damages, and punitive damages for defendants' commission of false imprisonment.[3]

---

[1] The LSBC was established under the Louisiana Cosmetology Act as a professional association within the meaning of Article VII, Section 9 of Louisiana Constitution. La. R.S. § 37:563(2).

[2] The Complaint states that Plaintiffs filed suit on their own behalf as well as on behalf of a class similarly situated pursuant to Rules 23(a) and 23(b), defining the class of plaintiffs as "all past and present Vietnamese- and Asian-American hair and nail salon owners in Louisiana who have been harassed, intimidated, falsely imprisoned, and arbitrarily discriminated against or racially profiled based on their race, ethnicity, or national origin by the [LSBC] and/or its agents." (Doc. 1-1 at p. 4). Plaintiffs, however, did not comply with the Court's Local Rules regarding class actions. Specifically, they did not caption their Complaint as a class action, nor did they move for certification under Rule 23(c)(1) within ninety days of filing their Complaint. *See* LR 23.1. The Court only considers the claims brought by Plaintiffs on their own behalf, as no class has been certified in the instant matter.

[3] Plaintiffs also requested preliminary injunctions, (*see* Doc. 1 at ¶ 33), but never filed applications for preliminary injunctions separate from the Complaint, as required by the Court's Local Rules, *see* LR65.1. The Court does not consider Plaintiffs' requests for preliminary injunctions herein, as they are not properly before the Court.

On April 28, 2014, Defendant Cangelosi filed motions to dismiss pursuant to Rules 12(b)(6) and 12(b)(1), as well as motions to strike pursuant to Rule 12(f) and La. C.C.P. article 971. (Doc. 16). With no opposition from any defendants and with leave from the Court, Plaintiffs filed a First Amended and Supplemental Complaint for Injunctive Relief and Damages (Doc. 44) on August 13, 2014.[4]

On August 28, 2014, Defendant Cangelosi responded with the instant Motions to Dismiss and Motions to Strike. (Doc. 46). Because Defendant's instant motions adopt the recitation of facts and the arguments contained in her earlier motions, the Court denied as moot Defendant's earlier motions. (*See* Doc. 51). In its Ruling herein, the Court considers the facts and arguments asserted in Defendant's earlier motions as incorporated by reference in her instant motions.

Defendant Cangelosi argues that Plaintiffs lack standing to bring their claims against her. Further, she argues that she is entitled to absolute immunity because the claims arise from her performance of a quasi-judicial or quasi-prosecutorial function or, alternatively, that she is entitled to qualified immunity. Separately, Defendant moves to strike Plaintiffs' allegations subject to Rule 12(f) as impertinent and scandalous. She also files a Special Motion to Strike under La. C.C.P. art. 971, requesting reasonable costs and attorney's fees on the basis that

---

[4] Because Plaintiffs' Amended Complaint expressly incorporates the original Complaint, Plaintiffs' original Complaint retains legal effect. *See Canal Ins. Co. v. Coleman*, 625 F.3d 244, 246 n.2 (5th Cir. 2010) (*King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)) (amended complaint supersedes original complaint and renders it of no legal effect "*unless* amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading" (emphasis added)). Thus, the Court considers both the initial Complaint and the Amended Complaint in the instant Ruling. Similarly, the Court considers the contents of both Defendant's initial Motion to Dismiss and Motion to Strike (Doc. 16) and her Amended Motion to Dismiss and Motion to Strike (Doc. 46), since the latter adopts the recitation of facts and arguments of the former.

Plaintiffs' claims against Defendant arise from Defendant's actions in furtherance of her right to free speech in connection with a public issue. The Court proceeds to first consider Defendant's motions to dismiss and then Defendant's motions to strike.

## II.    MOTIONS TO DISMISS

### A.    Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

#### 1.    *Standard of Review*

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286–87 (5th Cir. 2012) (*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* (*Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* (*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2001)). Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

In ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2009). *See also Ramming*, 281 F.3d at 161 (stating that a

court ruling on a 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts"). A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief. *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

However, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 318 (5th Cir. 2012) (*Ramming*, 281 F.3d at 161). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction." *Id.* (Fed. R. Civ. P. 8(a)(1)). In federal question cases, the party must demonstrate a non-frivolous claim based on federal law. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939).

When a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case, and does not bar the plaintiff from pursuing the claim in a proper jurisdiction. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

## 2. *Discussion*

Before moving to the sufficiency of Plaintiffs' claims, the Court must resolve Defendant's challenge to Plaintiffs' standing to bring the claims in the first place. A

motion to dismiss for lack of constitutional standing is properly filed pursuant to Rule 12(b)(1). *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Defendant alleges that Plaintiffs lack constitutional standing because they have not suffered an injury in fact. *See id.* at 795 ("The three requirements of Article III standing are familiar: the plaintiffs must allege an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable ruling." (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992))). Defendant argues that Paragraph 27 of the Complaint, as amended, contains factual allegations that arose during a September 2013 LSBC board hearing concerning interactions between Defendant and one Hang T. Nguyen, an individual who has not joined as a named plaintiff in this suit.

After examining the Amended Complaint and the transcript of the September 2013, the validity or accuracy of which is not disputed,[5] the Court agrees with Defendant that Plaintiffs have not sufficiently demonstrated that they suffered an injury in fact from Defendant's alleged actions in the LSBC September 2013 hearing, to which no Plaintiff was a party.

Paragraph 27 of the Amended Complaint, however, goes on to allege facts beyond the scope of the September 2013 hearing. The Complaint alleges that Defendant had employed an individual to investigate and testify against salon businesses, and that individual was "only asked to target Vietnamese- and Asian-

---

[5] The hearing transcript was submitted as an exhibit attached to Defendant's initial 12(b)(1) and 12(b)(6) motions, (*see* Doc. 16-2), and was cited for support by Plaintiffs in their response briefing, (*see* Doc. 20 at p. 20). Thus, the Court deems the contents of the transcript to be undisputed facts in the record, which it may consider in evaluating Defendant's 12(b)(1) motion to dismiss.

owned salons." (Doc. 44 at p. 8). According to the Complaint, that individual investigated the business of Plaintiff Mai Thi Nguyen and testified at Nguyen's Rule to Show Cause Hearing. (*Id.*). Plaintiffs further allege that Defendant colluded with inspectors to target Asian- and Vietnamese-owned nail salons for alleged violations. (Doc. 44 at pp. 7–8). Plaintiffs allege in detail instances in which they have been subject to LSBC investigatory and enforcement action. (Doc. 1 at ¶¶ 7–16, 29).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The Court finds that Plaintiffs' allegations of Defendant directing the targeting of salons based on race or national origin of salon ownership, if true, would constitute an injury in fact suffered by Plaintiffs. Thus, at this stage of the litigation, Plaintiffs have established constitutional standing, such that their claims of racial discrimination and false imprisonment survive dismissal. In the event that the discovery process reveals evidence providing a valid basis to challenge the Court's subject matter jurisdiction over the instant matter, Defendant may file an appropriate motion at a later juncture in the proceedings. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff seeking to invoke federal jurisdiction bears burden of establishing elements of standing at successive stages of litigation). Accordingly, Defendant's motion to

dismiss pursuant to Rule 12(b)(1) is **DENIED**, without prejudice to Defendant's right to reassert a lack of subject matter jurisdiction at a later time.

### B.  Immunity Assertions Raised Pursuant to Rule 12(b)(6)

Here, Defendant asserts that she is entitled to absolute quasi-judicial immunity from claims arising from Defendant's actions as LSBC complaint counsel and advisor.[6] In the alternative, Defendant argues she is entitled to qualified immunity for Plaintiffs' failure to establish that Defendant violated Plaintiffs' clearly established constitutional rights. For the reasons discussed below, the Court finds that Defendant is not entitled to either absolute or qualified immunity.

### *1.  Standard of Review*

Claims of absolute and qualified immunity may be raised in a Rule 12(b)(6) motion to dismiss. *See Morales v. State of Louisiana*, 74 F.3d 1236 (5th Cir. 1995). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*Twombly*, 550 U.S. at 556).

Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the

---

[6] The Court notes that the hearing agenda in the record lists Defendant as "board counsel." (Doc. 16-2 at p. 2). Defendant, however, refers to her position as "complaint counsel" in her own briefings. (*See* Doc. 46-1 at pp. 11, 13). In the Ruling herein, the Court adopts the use of "complaint counsel" to refer to Defendant Cangelosi's title, but there are insufficient facts in the record for the Court to make a determination today as to Defendant's official position.

elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

Although courts generally are not permitted to review materials outside of the pleadings when determining whether a plaintiff has stated a claim for which relief may be granted, there are limited exceptions to this rule. Specifically, a court may consider documents attached to a Rule 12(b)(6) motion to be part of the pleadings if the plaintiff refers to those documents and they are central to the claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## 2.    *Discussion*

"'Absolute immunity' denies a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct. As such the [U.S.] Supreme Court has been 'quite sparing' in recognizing absolute immunity." *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997). Qualified immunity, on the other hand, renders government officials immune from "liability for the performance of their discretionary actions unless their conduct violates clearly established statutory or constitutional rights which a reasonable person would have known." *Id.*

Whether an official may assert absolute or qualified immunity depends on "the nature of the function performed, not the identity of the actor who performed

it." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (*Forrester v. White*, 484 U.S. 219, 229 (1988)). An official may be fully protected by absolute immunity when carrying out one function, but may only be protected by qualified immunity when performing another function. *See id.*

### a) *Absolute Immunity*

"Whether a defendant possesses absolute immunity from suit is a question of law." *Walter v. Torres*, 917 F.2d 1379, 1383 (5th Cir. 1990). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Regarding Plaintiffs' claim that Defendant "is responsible for the implementation of the discriminatory structure of [LSBC] meetings and hearings," (Doc. 44 at p. 7), Defendant argues that she possesses absolute immunity from suit, asserting that her "actions as complaint counsel and as advisor to the board during a disciplinary hearing were well within the confines of those quasi-judicial functions that have an 'integral' relationship to the administrative hearing," (Doc. 16-1 at p. 10).

"[O]fficials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision." *Butz v. Economou*, 438 U.S. 478, 516 (1978). The Fifth Circuit has held that absolute immunity extends to members of administrative boards serving in quasi-prosecutorial and quasi-judicial roles. *See Di Ruzzo v. Tabaracci*, 480 F. App'x 796, 797 (5th Cir. 2012) (absolute immunity

extends to counsel and members of Texas Medical Board performing quasi-prosecutorial and quasi-judicial functions); *see also Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676 (5th Cir. 1985) (absolute immunity extended to association, its disciplinary officers, and its staff members to the extent they were acting as prosecutors within the outer scope of their duties).

Although the Court examines the nature of the function performed and not the identity or title of the actor who performed it, the Court may only determine quasi-judicial or quasi-prosecutorial absolute immunity to be applicable when the official's challenged activities arise from the performance of her traditional official duties. *See Kalina v. Fletcher*, 522 U.S. 118, 131 (1997) (reaffirming the notion that "the prosecutor is fully protected by absolute immunity when performing the *traditional functions* of an advocate" (emphasis added)); *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976) (common-law absolute immunity for judges applies to "acts committed *within their judicial jurisdiction*," and a prosecutor similarly enjoys absolute immunity when acting "when he acts *within the scope of his prosecutorial duties*" (internal quotation marks and citation omitted) (emphases added)).

Plaintiffs claim that Defendant "repeatedly exceeded her authority by making unilateral decisions without first asking for the Board's collective vote" and asserts that "the Vice-Chair was present and still permitted [Defendant] to 'run' the meeting according to her preference." (Doc. 44 at p. 7). They assert that Defendant improperly exceeded the scope of her regular duties as complaint counsel and

advisor during the September 2013 hearing, rendering her without absolute immunity protection for the challenged actions during that hearing.

Defendant urges the Court to consider *Haygood v. Begue*, a case of our sister U.S. District Court for the Western District of Louisiana in which Brian Begue, an attorney serving as general counsel for the Louisiana State Board of Dentistry, was appointed to act as independent counsel for the Board's Disciplinary Committee. In *Haygood*, the plaintiff argued that Begue was not entitled to absolute immunity because Begue improperly combined his role as independent counsel with that of a prosecutor, exceeding the statutory limits of his actual authority. *See Haygood v. Begue*, No. 13-CV-0335, 2014 WL 1315004, at *3 (W.D. La. Mar. 31, 2014). The court rejected plaintiff's argument and held Begue absolutely immune from all claims related to his role as independent counsel, noting that Begue was serving as independent counsel pursuant to the authority expressly delegated to him under the Louisiana Administrative Code, and Begue's actions occurred "in direct relation to his quasi-judicial role" as Dental Board counsel. *Id.* at *3–4.

*Haygood* is distinguishable from the instant matter in an important aspect: in *Haygood*, there was no dispute that Begue's role as independent counsel was properly granted by the Dental Board chairman under the Louisiana Administrative Code, with statutorily specified functions of "ruling on evidentiary objections and other procedural issues raised during the hearing." La. Admin. Code,

tit. 46, pt. XXXIII, § 923(D).[7] *See also O'Neal v. Miss. Bd. of Nursing*, 113 F.3d at 66 n.2 (finding the Mississippi State Board of Nursing's board functions to be judicial in nature and protected by absolute immunity, based on the disciplinary hearing procedures and board powers and duties explicitly detailed by statute).

In the instant case, in contrast, Defendant has not directed the Court to any statutory provision in the Louisiana Cosmetology Act defining the role of complaint counsel, nor any statutory provision describing the means by which quasi-judicial functions may be delegated during an LSBC hearing. Further, the hearing transcript submitted into the record as an attachment to Defendant's motion to dismiss reflects that one Lora V. Moreau—and not Defendant—was designated to serve as Acting Chairman to preside over the September 2013 meeting in question. (*See* Doc. 16-2 at p. 2).

Defendant, who seeks absolute immunity, bears the burden of showing that immunity is justified for the function in question. *See Burns v. Reed*, 500 U.S. at 486. Yet Defendant has not made specific assertions or provided evidence to establish the scope of her authority as complaint counsel or advisor, such that the Court could determine whether the quasi-judicial or quasi-prosecutorial functions

---

[7] Section 923(D) of the Louisiana Administrative Code, concerning adjudicatory hearings of the Louisiana State Board of Dentistry, reads, in full:

> During and before an adjudication hearing, the chairman shall rule upon all evidentiary objections and other procedural questions, but in his discretion may consult with the entire hearing panel in executive session. At any such time, the hearing panel may be assisted by legal counsel, retained by the board for such purpose, who is independent of complaint counsel and who has not participated in the investigation or prosecution of the case. If the board or hearing panel is attended by such counsel, the chairman may delegate to such counsel ruling on evidentiary objections and other procedural issues raised during the hearing.

for which Defendant seeks immunity are properly within the bounds of her official duties.

Additionally, insofar as Defendant claims that her alleged instruction to her secretary to gather evidence or alleged collusion with inspectors to target certain salons constituted prosecutorial actions subject to absolute immunity, the Court disagrees. "A state agent performing investigative functions, as opposed to adjudicative or prosecutorial functions, is not entitled to absolute immunity." *Di Ruzzo*, 480 F. App'x at 797. The U.S. Supreme Court has explained:

> Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive. Rather, . . . we inquire whether the prosecutor's actions are closely associated with the judicial process.

*Burns v. Reed*, 500 U.S. at 495. The gathering of evidence and the inspection of salons may be prerequisite to a summons to a salon owner to appear at an LSBC hearing, but the inspections themselves are too remote from the hearing proceeding for the Court to deem them protected by absolute immunity.

Accepting as true Plaintiffs' well-pleaded facts regarding allegations of Defendant's activities during an LSBC hearing and Defendant's involvement in targeting certain salons for regulatory inspection, Defendant has not shown as a matter of law that she is entitled to absolute immunity such that dismissal is warranted at this stage in litigation. If the discovery process supplements the record with more facts demonstrating quasi-judicial or quasi-prosecutorial functions to be within the scope of Defendant's responsibilities and duties as an LSBC official,

the Court will reconsider the question of Defendant's absolute immunity upon a motion properly raised at a later time.

b) *Qualified Immunity*

Defendant, alternatively, claims she is entitled to the protections of qualified immunity. Qualified immunity shields defendants from "civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). A court should grant a Rule 12(b)(6) motion to dismiss based on qualified immunity unless the complaint states facts showing that a defendant violated a plaintiff's clearly established federal right. "[Q]ualified-immunity analysis is based upon two, well-established prongs: (1) whether plaintiffs show violation of a clearly-established statutory or constitutional right; and, if so, (2) whether they show defendants' actions were objectively unreasonable in light of clearly established law." *Porter v. Valdez*, 424 F. App'x 382, 386 (5th Cir. 2011) (quotation marks and internal alterations omitted). *See also Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

To correct an apparent misunderstanding on the part of the Defendant, the Court must clarify the degree to which qualified immunity would shield Defendant from the claims lodged against her. Qualified immunity is applicable to bar suit only to the extent a defendant is sued in her *individual* capacity. *See Walker v. Howard*, 517 F. App'x 236, 237 (5th Cir. 2013). Thus, the Court's analysis of qualified immunity here has no bearing on the claims lodged against Defendant in

her official capacity. Furthermore, qualified immunity does not prevent an award of prospective injunctive relief. *See Mangaroo v. Nelson,* 864 F.2d 1202, 1208 (5th Cir. 1989). Here, the face of Plaintiffs' complaint does not seek damages against Defendant Cangelosi, but only declarative and injunctive relief in connection with Plaintiffs' constitutional claims of racial discrimination pursuant to § 1983. (*See* Doc. 1 at ¶ 33).[8] Here, with no facts in the record to support a claim for damages against Defendant Cangelosi, the Court finds Defendant's qualified immunity argument inapplicable. Should discovery adduce additional facts to allow the Court to ascertain a viable claim seeking damages against Defendant in her individual capacity, Defendant may raise an argument for qualified immunity again and the Court will evaluate her entitlement to qualified immunity at such time.

---

[8] Plaintiffs do, however, seek costs and damages in connection with their false imprisonment claim. (Doc. 1 at ¶ 33). The Complaint only provides the essential elements of the tort of false imprisonment, with no mention of constitutional rights implicated by the alleged restraint of freedom. (*Id.* at ¶ 28). However, the U.S. Supreme Court has made clear that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, ___, 135 S. Ct. 346, 346 (2014) (per curiam). So long as Plaintiffs have adequately pleaded substantively plausible factual allegations sufficient to survive threshold dismissal, they need not expressly invoke § 1983. *See id.* Here, the facts pleaded in support of Plaintiffs' false imprisonment claim, (*see* Doc. 1 at ¶ 8), implicate Fourth Amendment protections from unreasonable searches and seizures.

However, even though the Court notes that Plaintiffs' false imprisonment claims could be construed as § 1983 claims for which Plaintiffs seek civil damages liability (claims that would be barred against a defendant who possesses qualified immunity), the Complaint simply does not contain facts sufficient to support a claim of false imprisonment against Defendant Cangelosi. With regard to Defendant's alleged involvement in inspections and investigations on-site at salons, the Complaint states that Defendant "employed her own secretary or clerk as a witness" and "asked her secretary . . . to gather evidence," as well as "knowingly colluded" with inspectors "to arbitrarily target" certain salons. There is no mention of Defendant in the factual allegations regarding the instance in which LSBC inspectors were to have entered a salon owned by Plaintiff Thoa Thi Nguyen and "prohibited Mrs. Nguyen and her employees from leaving" for approximately two hours. (Doc. 1 at ¶ 8). Nor is there a factual basis elsewhere in the Complaint linking Defendant Cangelosi to any alleged commission of false imprisonment.

## III.    MOTIONS TO STRIKE

### A.    Motion to Strike Under Rule 12(f)

Defendant seeks to strike allegations of racism from Paragraph 27 of the Complaint, stating that such allegations pleaded are "inflammatory and conclusory allegations which are not supported and should be struck pursuant to [Rule] 12(f) as impertinent and scandalous." (Doc. 16-1 at p. 3). Rule 12(f) allows a district court to strike, either on proper motion by a party or on its own initiative, any redundant, immaterial, impertinent, or scandalous matter in any pleading. A district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike. *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012). However, "the action of striking a pleading should be sparingly used by the courts. . . . The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) (*Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). So long as the challenged allegations describe acts or events that are relevant to the action and are minimally supported in the record, a complaint will not be stricken even if it offends the sensibilities of the objecting party. *See Coney*, 689 F.3d at 379–80.

Here, the controversy concerns alleged discrimination and profiling based on race, ethnicity, and national origin committed by the LSBC and its agents. The Court finds a possible relation between the aspects of the controversy and the allegations of "overt discriminatory practice" by Defendant during LSBC board

hearings. Further, the limited evidence in the record supports—if only minimally—a basis for Plaintiffs' assertion of discriminatorily applied enforcement.[9]

In the exercise of its discretion, the Court here deems it imprudent to strike allegations of racial discrimination, however offensive, in a case centered on claims of racial discrimination. Accordingly, Defendant's motion to strike allegations from Paragraph 27 of the Complaint, pursuant to Rule 12(f), is **DENIED WITH PREJUDICE**.

### B.      Special Motion to Strike Under La. C.C.P. art. 971

Finally, Defendant seeks reasonable attorney's fees and costs under Louisiana's Special Motion to Strike, also known as article 971 of the Louisiana Code of Civil Procedure, which provides: "a cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim." A party prevailing under an article 971 motion to strike is entitled to reasonable attorney's fees and costs. *See* La. C.C.P. art. 971B. Article 971 serves "as a procedural device to be used early in legal proceedings to screen meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press." *Henry v. Lake Charles*

---

[9] As exhibits to their original Complaint, Plaintiffs attached the agendas from two 2013 LSBC hearings, both of which list names of individuals and businesses subject to LSBC enforcement. (*See* Docs. 1-2, 1-3). Plaintiffs assert, and the exhibits appear to corroborate, that the violation hearings were "almost completely filled with Vietnamese and Asian-Americans." (Doc. 1-1 at ¶¶ 17, 18).

*American Press, L.L.C.,* 566 F.3d 164, 169 (5th Cir. 2009) (*Lee v. Pennington,* 830 So.2d 1037, 1041 (La. Ct. App. 2002)). Defendant argues that "Plaintiffs cannot show a probability of success regarding their claims against [Defendant], and those claims are clearly related to written and oral statements made in connection with an issue under consideration or review by an official body authorized by law." (Doc. 46-1 at p. 13).

Article 971 creates a burden-shifting test. First, the movant must make a *prima facie* showing that article 971 covers the activity underlying the suit, specifically that "the matter arises from an act in furtherance of his or her right of free speech or the right of petition and in relation to a public issue"; then, if the movant makes this showing, then the burden shifts to the plaintiff to "demonstrate a probability of success on his or her own claim." *See Henry*, 566 F.3d at 181. The purpose of the law, as stated by the Louisiana legislature, is "to encourage continued participation in matters of public significance." *Id.* at 169 (*Thomas v. City of Monroe*, 833 So.2d 1282, 1286 (La. Ct. App. 2002)).

Although the legislature articulated its intent for article 971 to be "construed broadly," *see id.*, Defendant has not made a *prima facie* showing that article 971 covers her alleged written or oral statements. Defendant's motion does not point to any specific statement she made in furtherance of her rights of petition or free speech. Further, Defendant's apparent role in the LSBC hearing was that of LSBC complaint counsel and advisor, that is, as an official of a state-created professional organization. As a general rule, "[t]he First Amendment protects the press from

governmental interference; it confers no analogous protection on the Government." *Columbia Broad. Sys., Inc. v. Democratic Nat. Comm.*, 412 U.S. 94, 139 (1973). Thus, with Defendant ostensibly speaking in her capacity as a state official during LSBC hearings, the Court declines to presume that Defendant's statements were in connection with a public issue in furtherance of her First Amendment rights merely because they were made *during* an LSBC hearing.

Due to a lack of detail in the instant motion, Defendant has not met her initial burden to prove that her underlying activity, as alleged in the Complaint, was made in furtherance of her right of free speech or right of petition and in relation to a public issue. Thus, Defendant's Special Motion to Strike Under La. C.C.P. art. 971 is **DENIED WITH PREJUDICE**.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Defendant Celia R. Cangelosi's Rule 12(b)(6) and 12(b)(1) Motions to Dismiss and Special Motion to Strike Plaintiffs' First Amended and Supplemental Complaint (Doc. 46)** is **DENIED** in its entirety.

Specifically,

Defendant's Rule 12(b)(1) Motion to Dismiss is **DENIED WITHOUT PREJUDICE** to reassert lack of subject matter jurisdiction at a later stage in the proceedings;

Defendant's Rule 12(b)(6) Motion to Dismiss based on absolute and/or qualified immunity is **DENIED WITHOUT PREJUDICE** to reassert immunity entitlement at a later stage in the proceedings;

Defendant's Rule 12(f) Motion to Strike is **DENIED WITH PREJUDICE**; and

Defendant's Special Motion to Strike Under La. C.C.P. art. 971 is **DENIED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 11th day of February, 2015.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA