# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**THOA T. NGUYEN, ET AL.**                    **CIVIL ACTION**

**VERSUS**

**LOUISIANA STATE BOARD OF**                **NO.: 14-00080-BAJ-RLB**
**COSMETOLOGY, ET AL.**

## RULING AND ORDER

Before the Court is the **Rule 12(b)(6) Motion to Dismiss Plaintiffs'
Complaint and First Amended and Supplemental Complaint (Doc. 57)** filed
by Defendants Louisiana State Board of Cosmetology ("LSBC"), Steve Young,
Frances Hand, Sherrie Stockstill, and Margaret Keller (collectively, "Defendants").
Defendants move to dismiss the **Complaint (Doc. 1)** and **First Amended and
Supplemental Complaint (Doc. 44)** of Plaintiffs Thoa T. Nguyen, et al., pursuant
to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Plaintiffs oppose this Motion. (Doc. 60). The Court has jurisdiction pursuant
to 28 U.S.C. §§ 1331, 1367. Oral argument is not necessary. For reasons explained
herein, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

On February 6, 2014, Plaintiffs filed a Complaint for Injunctive Relief and
Damages (Doc. 1) against the instant Defendants, among other defendants, seeking
injunctive relief and damages. With no opposition from any defendants and with

leave from the Court, Plaintiffs filed their First Amended and Supplemental Complaint for Injunctive Relief and Damages (Doc. 44) on August 13, 2014.

Plaintiffs are nail salon owners in Louisiana who allege that they have been "harassed, intimidated, falsely imprisoned, and arbitrarily discriminated against or racially profiled based on their race, ethnicity or national origin by the Louisiana State Board of Cosmetology and/or its agents." (Doc. 1-1 at ¶ 5).[1] Specifically, Plaintiffs assert claims of (1) racial discrimination in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment, and (2) false imprisonment. Plaintiffs pray for relief in the form of, *inter alia*, declaratory judgment that Defendants violated Plaintiffs' rights; an injunction enjoining Defendants from further discriminatory practices; an injunction ordering Defendants to reinstate Plaintiffs' business licenses; an injunction ordering Defendants to develop and institute a training program; and costs, damages, and punitive damages for Defendants' commission of false imprisonment.[2] (Doc. 1-1 at ¶ 33).

On January 14, 2015, with leave from the Court, Defendants filed the instant Motion to Dismiss,[3] asserting: (1) Plaintiffs failed to state a claim upon which relief

---

[1] The Complaint states that Plaintiffs filed suit on their own behalf as well as on behalf of a class similarly situated pursuant to Rules 23(a) and 23(b). As explained in an earlier ruling in this matter, Plaintiffs did not comply with the Court's Local Rules regarding class actions, and no class has been certified in this matter. (*See* Doc. 61 at p. 2 n.2).

[2] Plaintiffs also requested preliminary injunctions, (*see* Doc. 1-1 at ¶ 33), but never filed applications for preliminary injunctions separate from the Complaint, as required by the Court's Local Rules, *see* LR65.1. As explained in an earlier ruling in this matter, the Court does not consider Plaintiffs' requests for preliminary injunctions herein, as they are not properly before the Court. (*See* Doc. 61 at p. 2 n.3).

[3] Defendants filed their first 12(b)(6) motion to dismiss on April 28, 2014, in response to Plaintiffs' initial Complaint and prior to Plaintiffs' filing of their Amended Complaint. In order to sharpen the

may be granted, (2) the Eleventh Amendment bars Plaintiffs' claims against the LSBC; (3) the individual defendants are entitled to immunity from Plaintiffs' claims. Plaintiffs oppose the Motion. (*See* Doc. 60).[4]

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Claims of absolute and qualified immunity may also be raised in a Rule 12(b)(6) motion to dismiss. *See Morales v. State of Louisiana*, 74 F.3d 1236 (5th Cir. 1995).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*Twombly*, 550 U.S. at 556).

---

issues presented to the Court, Defendants were granted leave to file the instant 12(b)(6) motion to dismiss in response to Plaintiffs' Amended Complaint.

[4] Plaintiffs' response in opposition to Defendants' instant motion to dismiss, (Doc. 60), incorporates their response to Defendants' original motion to dismiss, (Doc. 19).

Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

The Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quotation marks and citations omitted). However, "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, ___, 135 S. Ct. 346, 346 (2014) (per curiam).

## III.  DISCUSSION

### A.  Failure to State a Claim

Defendants argue that Plaintiffs have failed to state claims upon which relief may be granted against individual Defendants Young, Hand, Stockstill, and Keller.

### *1. Claims Against Steve Young and Frances Hand*

The Complaint does not set forth *any* factual allegations that would form a basis for plausible claims against Defendants Young and Hand. The only reference to Young in the factual allegations details one of Plaintiffs' interactions with Young, wherein "a citation was still issued even after assurances by Mr. Young that [Plaintiff could] continue to prepare the store for business." (Doc. 1-1 at ¶ 11). There is no indication what allegedly unconstitutional action is attributable to Young. As to Hand, there is no reference whatsoever to Hand in the Complaint's factual allegations.

"In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Here, the Court recognizes that Young and Hand serve as LSBC's Executive Director and Chairman respectively, but merely the fact that these individuals hold leadership positions in LSBC is insufficient to state a plausible claim. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 291–92 (5th Cir. 2005) (*Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir.2001)). Plaintiffs have failed to allege any act on the part of Young and Hand which contributed to the violation of Plaintiffs' constitutional rights. Similarly, Plaintiffs have not alleged any facts

sufficient to support a claim against Young and Hand involving a state tort of false imprisonment.

Accordingly, with respect to Defendants Young and Hand, Defendants' 12(b)(6) motion to dismiss is **GRANTED**, and all claims against Defendants Young and Hand are **DISMISSED WITH PREJUDICE**.

### 2. *Claims Against Sherrie Stockstill and Margaret Keller*

In contrast to the claims against Young and Hand, the Complaint contains specific factual allegations against LSBC inspectors Stockstill and Keller. With regard to Defendant Stockstill, Plaintiffs allege that on July 19, 2013, Stockstill and an unknown LSBC inspector entered the business of Plaintiff Thoa T. Nguyen and demanded personal identification and business licenses from Nguyen and her employees. (Doc. 1-1 at ¶ 8). According to Plaintiffs, Stockstill and the other inspector, without permission, "proceeded to open doors, search compartments, sift through files, and prohibited Mrs. Nguyen and her employees from leaving" for "approximately the next two hours." (*Id.*).

In Louisiana, the two essential elements of a false imprisonment claim are: (1) detention of a person; and (2) the unlawfulness of such detention. *Anderson v. Wal-Mart Stores, Inc.*, 675 So.2d 1184, 1186 (La. App. Ct. 1996); *see also Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La. 1977) ("False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority."). For false imprisonment to occur, there must be "a total and unlawful

restraint of a person's freedom of locomotion." *Rawls v. Daughters of Charity of St. Vincent De Paul, Inc.*, 491 F.2d 141, 146 (5th Cir. 1974), *cert. denied*, 419 U.S. 1032 (1974) (*Crossett v. Campbell*, 48 So. 141 (La. 1909)).

Here, the facts pleaded in support of Plaintiffs' false imprisonment claim, (*see* Doc. 1-1 at ¶ 8), implicate Fourth Amendment protections from unreasonable searches and seizures.[5] *See* U.S. Const. amend. IV. ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .). A seizure occurs when a government actor has restrained the liberty of a citizen such that a reasonable person would not feel free to terminate the encounter. *See United States v. Drayton*, 536 U.S. 194, 201 (2002) (recognizing that "[i]f a reasonable person would feel free to terminate the encounter, then he or she has not been seized"). The U.S. Supreme Court has long recognized that "the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes." *New York v. Burger*, 482 U.S. 691, 699 (1987). At this juncture in the proceedings, the Court need not decide whether the alleged seizure of Plaintiffs was reasonable. Rather, Plaintiffs need only to have alleged facts that, when taken as true, state a plausible claim that an unreasonable seizure occurred.

---

[5] The Complaint enumerates the essential elements of the tort of false imprisonment, with no mention of constitutional rights implicated by the alleged restraint of freedom. (*Id.* at ¶ 28). However, the U.S. Supreme Court has made clear that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, ___, 135 S. Ct. 346, 346 (2014) (per curiam). So long as Plaintiffs have adequately pleaded substantively plausible factual allegations sufficient to survive threshold dismissal, they need not expressly invoke § 1983. *See id.*

Defendants argue, however, that the inspection of Nguyen's business was conducted pursuant to regulatory authority. (Doc. 56-2 at p. 5). In support, Defendants cite a section of the Louisiana Cosmetology Act, which provides that the LSBC "shall be responsible for the control and regulation of the practice of cosmetology and shall . . . [i]nspect during hours of operation any licensed, permitted, certified, or registered facility or school, including but not limited to pertinent records, for the purpose of determining if any provisions of law governing the practice of cosmetology are being violated." La. R.S. § 37:575(10).

The facts alleged in the Complaint are not merely conclusory and, viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately stated a claim of false imprisonment under both Louisiana law and the U.S. Constitution. The Complaint alleges that the inspectors ordered Plaintiffs to cease work and prohibited them from leaving the salon premises for approximately two hours. (Doc. 1-1 at ¶¶ 8, 29). An order not to leave the business premises for two hours can reasonably be understood to constitute a detention as well as a seizure. Although the inspection was conducted according to regulatory authority, the statutory provision put forth by the Defendants does not expressly authorize inspectors to detain persons on the premises during inspections. Accordingly, Plaintiffs have stated a plausible claim of false imprisonment against Defendant Stockstill.

In contrast, the factual allegations of the Complaint do not support a claim of false imprisonment against Defendant Margaret Keller. Plaintiffs allege that Keller

entered the business of Plaintiff Hanh Hoang in April or May of 2012 with no prior notice, "immediately went to the supply room and began talking on the phone . . . consistently laughing and joking in the presence of Ms. Hoang and her patrons." (Doc. 1 at ¶ 9). According to Plaintiffs, Keller subsequently cited Hoang for violations in a fine over $3,000. (*Id.*). There are no allegations of conduct rising to the level of detention or seizure. In particular when considering the regulatory authority of Keller to conduct LSBC inspections pursuant to La. R.S. § 37:575, these actions, even if taken to be true, do not constitute a plausible claim for false imprisonment.

Finally, Plaintiffs allege that "[w]ith belief, Ms. Cangelosi knowingly colluded with Ms. Sherrie Stockstill, Margaret Keller, and other close-by inspectors . . . to arbitrarily target . . . Asian and Vietanamese- salon owners for minor violations." (Doc. 44 at p. 8). Defendants argue that these are mere conclusory allegations that Defendants discriminated against Plaintiffs based on race. The Court disagrees. When the allegation of targeting salons based on race is considered in conjunction with the other numerous and specific factual allegations regarding Stockstill's and Keller's inspections and citations of various Plaintiffs' businesses, (*see* Doc. 1-1 at ¶¶ 8–11, 15–16), the Court finds that the facts, when taken in the light most favorable to Plaintiffs, support a plausible claim for racial discrimination in violation of the Fourteenth Amendment.[6]

---

[6] *See Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (holding that a facially race-neutral law, when administered in a prejudicial manner, is an infringement of the Equal Protection Clause of the Fourteenth Amendment).

Accordingly, Defendant Stockstill's 12(b)(6) motion to dismiss for failure to state a claim is **DENIED** as to both claims. Defendant Keller's 12(b)(6) motion to dismiss for failure to state a claim is **GRANTED IN PART**, with respect to the claim of false imprisonment, and **DENIED IN PART**, with respect to the claim of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

## B. LSBC's Eleventh Amendment Immunity

"Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). Specifically, federal courts have no jurisdiction "over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (citations omitted). "[T]he State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State," such that the state itself is "the real, substantial party in interest." *Vogt*, 294 F.3d at 688–89 (5th Cir. 2002).

Here, Defendants argue that the LSBC is an arm of the state, and is thus entitled to immunity from suit under the Eleventh Amendment.[7] There is no simple test to determine whether a state agency is an arm of the state for purposes of

---

[7] To the extent that Plaintiffs seek declaratory and injunctive relief against individual Defendants, Defendants do not argue that the Eleventh Amendment bars those claims. "Despite [the sovereign immunity] bar, a federal court may enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution." *Moore*, 743 F.3d at 963.

Eleventh Amendment immunity, although the U.S. Court of Appeals for the Fifth Circuit has traditionally relied on the following six factors to guide its analysis:

> (1) Whether the state statutes and case law view the agency as an arm of the state; (2) The source of the entity's funding; (3) The entity's degree of local autonomy; (4) Whether the entity is concerned primarily with local as opposed to statewide problems; (5) Whether the entity has the authority to sue and be sued in its own name; and (6) Whether the entity has the right to hold and use property.

*See, e.g.*, *Cozzo v. Tangipahoa Parish Council--President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002); *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). Not all the factors are afforded equal weight. Indeed, the Fifth Circuit has held that the second factor, the source of the entity's funding, is the most important factor. *See Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999). Furthermore, "the last two factors weigh significantly less in the six factor balance of equities." *Cozzo*, 279 F.3d at 281 (5th Cir. 2002). Considering these factors, discussed in detail below, the Court concludes that a suit against the LSBC is not, in effect, a suit against the State of Louisiana.

### 1. State's View

The Louisiana legislature, in establishing the LSBC under the Louisiana Cosmetology Act ("the Act"), decreed that the LSBC "shall constitute a professional association within the meaning of Article VII, Section 9 of the Constitution of Louisiana." La. R.S. § 37:563(2). Under Louisiana's constitution, professional associations are distinguished from state boards, agencies, and commissions, who must deposit all money received immediately in the state treasury. *See* La. Const. art. VII, § 9. Based on the Act's designation of the LSBC as a professional

11

association and statutory differentiation between professional associations and state boards, there is no indication that Louisiana would view the LSBC as an arm of the state. *Cf. Earles v. State Bd. of Certified Pub. Accountants of La.*, 139 F.3d 1033, 1037 (5th Cir. 1998) (finding that Louisiana would regard State Board of Certified Public Accountants of Louisiana as part of state, when state statute defined Board as "state agency within the Department of Economic Development"); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986) (determining that state viewed Louisiana Department of Wildlife and Fisheries and Louisiana Wildlife and Fisheries Commission as arms of state, when state statute enumerated Department as part of "executive branch of state government," and Commission as part of that Department). Here the legislature was explicit in separating the LSBC as a professional association unlike traditional state boards, agencies, and commissions. This first factor weighs against the LSBC being considered an arm of the state.

## 2.  *Source of Entity's Funding*

The Fifth Circuit has deemed this second factor the most significant "because an important goal of the [E]leventh [A]mendment is the protection of states' treasuries, the most significant factor . . . is whether a judgment against it will be paid with state funds." *Richardson v. S. Univ.*, 118 F.3d 450, 455 (5th Cir. 1997) (citation omitted).

The state legislature apparently contemplated the possibility that the LSBC would receive an "annual or biennial appropriation," although the Act permits the

receipt and expenditure of funds from parties other than the state. *See* La. R.S. § 37:575. In practice, it appears that in available documentation from the years 2004 to 2013, no money whatsoever has been appropriated to the LSBC through the "State General Fund" or "State General Fund by interagency transfers." (*See* Doc. 19-1). In every single year from 2004 through 2013, the LSBC's total means of financing has been accounted for by fees and self-generated revenues. (*See id.*). Defendants' lone argument that state law mandates the LSBC's collection of fees and regulates the limits of those fees, *see* La. R.S. § 37:599, does not address the issue of whether LSBC's funding is linked to the state treasury. On the pleadings before the Court,[8] it appears undisputed that any judgment against the LSBC would not be paid from the state treasury. Thus, this factor, which is deemed most important of the six, cuts against the Court finding the LSBC to be an arm of the state.

### 3. *Entity's Degree of Local Autonomy*

In the Fifth Circuit, "the vulnerability of the commissioners to the governor's pleasure militates against a finding of local autonomy" but the Court must also consider the "extent of the entity's independent management authority." *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 442 (5th Cir. 1985).

---

[8] A court may consider documents attached to a Rule 12(b)(6) motion to be part of the pleadings if the plaintiff refers to those documents and they are central to the claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Plaintiffs attached a copy of LSBC budget summary statements, obtained through a FOIA request, to their opposition to Defendants' first 12(b)(6) motion to dismiss, which they have adopted in their opposition to the instant 12(b)(6) motion to dismiss, so such budget summary statements, which are central to the invocation of Eleventh Amendment immunity, are properly within the scope of this Court's consideration.

Here, the eight LSBC board members are appointed by the governor, and they serve at the pleasure of the governor. *See* La. R.S. § 37:571. Yet the legislature affords the LSBC great latitude to, *inter alia*, "make necessary rules and regulations" to effectuate the purpose of the Act;[9] to enforce statutory provisions "related to conduct and competence, including but not limited to revocation, summary suspension, suspension, probation, reprimand, warnings, or fines";[10] to "receive and expend funds . . . from parties other than the state" and keep such funds "in a separate, special account";[11] and to "[e]mploy or contract for inspectors, clerical help, legal assistance, and other personnel."[12] This third factor of local autonomy does not cut neatly in either direction.

### 4. Scope of Entity's Concerns

As to this fourth factor, "[l]imited territorial boundaries suggest that an agency is not an arm of the state." *Vogt*, 294 F.3d at 695 (5th Cir. 2002). *See, e.g.*, *Cozzo*, 279 F.3d at 282 (finding sheriff's department to be concerned with local problems since sheriff's duties are "generally performed only within a single parish"). The LSBC is concerned with controlling and regulating the practice of cosmetology on a statewide, rather than local, scale. Nothing in the Act indicates that board members or inspectors are limited in the concerns to the territory of a district or other local subdivision. Qualifications for LSBC board members and

---

[9] La. R.S. § 37:575A(2).

[10] La. R.S. § 37:575A(8).

[11] La. R.S. § 37:575B(4).

[12] La. R.S. § 37:575B(7).

examination team members reference only the requirements pertaining to the state. *See* La. R.S. § 37:572 (every board member must be "duly qualified registered voter of this *state* and shall have been domiciled in the *state* for at least twelve consecutive months prior to appointment") (emphases added); La. R.S. § 37:585 (examination team members must be "registered voters of the *state* and who have been domiciled in the *state* for at least twelve consecutive months prior to employment as examination team members") (emphases added). Hence, with the LSBC's concern with statewide problems, the fourth factor supports a finding in favor of Eleventh Amendment immunity.

### 5. *Capacity to Sue and Be Sued*

The Fifth Circuit counts this fifth factor against Eleventh Amendment immunity if the entity has the ability to sue and be sued. *Hudson v. City of New Orleans*, 174 F.3d 677, 691 (5th Cir. 1999). Here, the Louisiana legislature has not expressly addressed whether the LSBC is authorized to sue and be sued in its own name. The LSBC has been subject to suit in state court, although it has inconsistently been sued both in its own name and as an entity through which to sue the state. *Compare Dural v. La. State Bd. of Cosmetology*, 4 So. 3d 874 (La. Ct. App. 2008), *with Belt v. State, Through La. Bd. of Cosmetology, Commerce Dep't*, 493 So. 2d 278, 280 (La. Ct. App. 1986), *writ denied*, 496 So. 2d 1044 (La. 1986).[13] With no clear direction from the legislature and conflicting case law regarding the

---

[13] The Court emphasizes that the Eleventh Amendment would only apply to bar suits in *federal* court, the existence of state court lawsuits to which the LSBC was a party is not dispositive and serves merely as guidance for the analysis of the multi-factor "state-arm test."

LSBC's capacity to sue and be sued, this factors lends little guidance to our Eleventh Amendment immunity inquiry.

### 6. *Right to Hold and Use Property*

The authorization for the LSBC to acquire, hold, and use property militates against the LSBC being considered an arm of the state. *See Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d at 187. Here, the LSBC is afforded a wide range of rights regarding property ownership and usage. The LSBC is responsible for maintaining a permanent testing center, La. R.S. § 37:575A(1)(A), for which it may "purchase, acquire, develop, expand, sell, lease, maintain, mortgage, borrow funds, or otherwise contract with respect to immovable property and improvements thereon as it may deem necessary or appropriate," La. R.S. § 37:575B(10). Further, upon the LSBC's sale of immovable property, "the revenue derived from the sale shall be retained by the [LSBC] and shall not be subject to reversion to the state general fund." La. R.S. § 37:575B(10). The LSBC's rights and responsibilities concerning property weigh against a finding of Eleventh Amendment immunity.

In sum, upon evaluation of the mixed indications given by the various factors discussed above, the Court is led to the conclusion that the LSBC is not an arm of the state. The question is a close one, but the Court is persuaded by the complete absence of state funding, which the Fifth Circuit holds to be the most significant factor, in addition to the statutory designation as a professional association, ambiguity as to whether the LSBC has the capacity to sue and be sued, and the

LSBC's authority to hold and use property. Thus, the Court finds that the LSBC is not entitled to Eleventh Amendment immunity.

### C. Individual Defendants' Absolute or Qualified Immunity

Having concluded *supra* that all claims against Defendants Young and Hand, as well as the false imprisonment claim against Defendant Keller, must be dismissed in this matter, the Court proceeds to analyze whether Defendants Stockstill and Keller, who are LSBC inspectors, are afforded the protections of immunity against the remaining claims.[14] In determining individual immunity, the Court examines "the nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S. Ct. 502, 508 (1997) (*Forrester v. White*, 484 U.S. 219, 229 (1988)). Defendants Stockstill and Keller contend that they are entitled to absolute immunity from claims arising from their performance of quasi-judicial functions. In the alternative, the individual Defendants argue that they are entitled to qualified immunity for Plaintiffs' failure to establish that Defendants violated Plaintiffs' clearly established constitutional rights.

#### 1. Absolute Immunity

"'Absolute immunity' denies a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct. As such the

---

[14] The Court recognizes that the LSBC, whose structure was established by the state legislature, does not lend itself to neat categorization as a government agency. Defendants, however, do not raise any argument disputing that LSBC officials are subject to Section 1983 claims by virtue of their operation "under color of any statute, ordinance, regulation, custom, or usage." *See* 42 U.S.C. § 1983. Thus, although the Court finds here that the LSBC is not an arm of the state under the Fifth Circuit's established test for Eleventh Amendment immunity, it assumes without deciding that Section 1983 applies to individual LSBC officials and employees and, thus, proceeds to analyze the merits of Defendants' individual immunity defenses.

[U.S.] Supreme Court has been 'quite sparing' in recognizing absolute immunity."
*O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997). The Fifth Circuit
has held that absolute immunity extends to members of administrative boards
serving in quasi-prosecutorial and quasi-judicial roles. *See Di Ruzzo v. Tabaracci*,
480 F. App'x 796, 797 (5th Cir. 2012) (absolute immunity extends to counsel and
members of Texas Medical Board performing quasi-prosecutorial and quasi-judicial
functions); *see also Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757
F.2d 676 (5th Cir. 1985) (absolute immunity extended to association, its disciplinary
officers, and its staff members to the extent they were acting as prosecutors within
the outer scope of their duties).

Here, Defendants Stockstill and Keller argue that their alleged actions in
their capacities as LSBC inspectors were quasi-judicial in nature. The Court
disagrees. "A state agent performing investigative functions, as opposed to
adjudicative or prosecutorial functions, is not entitled to absolute immunity." *Di
Ruzzo*, 480 F. App'x at 797. The U.S. Supreme Court has explained:

> Almost any action by a prosecutor, including his or her direct
> participation in purely investigative activity, could be said to be in
> some way related to the ultimate decision whether to prosecute, but we
> have never indicated that absolute immunity is that expansive.
> Rather, . . . we inquire whether the prosecutor's actions are closely
> associated with the judicial process.

*Burns v. Reed*, 500 U.S. at 495. The gathering of evidence and the inspection of
salons may be prerequisite to a summons to a salon owner to appear at an LSBC
hearing, but the inspections themselves are too remote from the hearing proceeding
for the Court to deem them protected by absolute immunity. Defendants have cited

no authority—nor is the Court aware of any—entitling the functions of a regulatory inspector to absolute immunity.

## 2. *Qualified Immunity*

Qualified immunity renders government officials immune from "liability for the performance of their discretionary actions unless their conduct violates clearly established statutory or constitutional rights which a reasonable person would have known." *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997). Therefore when qualified immunity is asserted as a defense, the Court must decide whether the defendant official violated federal law that was clearly established at the time she acted. *See Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

### a. *False Imprisonment*

In accordance with the Court's findings *supra*, Plaintiffs' false imprisonment claim remains intact only against Defendant Stockstill, of the defendants who are a party to the instant motion to dismiss. Defendants assert that Stockstill did not violate a clearly established constitutional right because her alleged actions would have been conducted as part of an LSBC inspection, pursuant to a business regulatory scheme. In particular, Defendants cite *New York v. Burger*, 482 U.S. 691 (1987), in support of their position.[15] Defendants argue that inspections of nail salons by the LSBC, a state-established professional association, serve a substantial

---

[15] Although owners of commercial premises in "closely regulated" industries have reduced expectations of privacy, a warrantless inspection will be deemed to adhere for the traditional Fourth Amendment standard of reasonableness only if: (1) there is a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made, (2) the warrantless inspections are necessary to further the regulatory scheme, and (3) the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. *Burger*, 482 U.S. at 702–03 (1987).

interest of promoting public health in accordance with the statutory obligation of the LSBC to regulate the practice of cosmetology in Louisiana.

The Court is unpersuaded by Defendants' argument on this point. Even assuming without deciding that there exists here a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made, wherein warrantless inspections are necessary to further the regulatory scheme, Defendants have not shown that there is a "constitutionally adequate substitute for a warrant" that limited the discretion of the inspectors and informed Plaintiffs that the inspection, including the alleged two-hour detainment, was made pursuant to law. *Burger*, 482 U.S. at 703 ("[T]he regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.").

According to the Complaint, Defendant Stockstill entered Plaintiff Nguyen's business without a warrant, searched compartments and files, ordered Nguyen and her employees to cease operations, and prohibited them from leaving the salon premises for approximately two hours during an LSBC inspection. (*See* Doc. 1 at ¶ 8). Absent a showing that the Louisiana Cosmetology Act or another statute provides a constitutionally adequate substitute for a warrant that would render as reasonable such a warrantless search by the LSBC, Plaintiffs have alleged that Defendant Stockstill infringed upon a clearly established Fourth Amendment right of freedom from unreasonable searches and seizures.

Should the discovery process adduce additional facts that would demonstrate that Defendant Stockstill was reasonable to make warrantless searches of salons, as described in the Complaint, the Court will reconsider the question of Defendant Stockstill's qualified immunity upon a motion properly raised at a later time.

### b. Racial Discrimination

With respect to the claims of racial discrimination, which remain intact against Defendants Stockstill and Keller, the Court must clarify the degree to which qualified immunity would shield Defendants from the claims lodged against them. Qualified immunity does not prevent an award of prospective injunctive relief. *See Mangaroo v. Nelson,* 864 F.2d 1202, 1208 (5th Cir. 1989). Here, the face of Plaintiffs' complaint seeks no damages, but only declarative and injunctive relief in connection with Plaintiffs' constitutional claims of racial discrimination pursuant to § 1983. (*See* Doc. 1-1 at ¶ 33). Accordingly, any assertion of qualified immunity with regard to these claims is misplaced.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint and First Amended and Supplemental Complaint (Doc. 57)** filed by Defendants Louisiana State Board of Cosmetology, Steve Young, Frances Hand, Sherrie Stockstill, and Margaret Keller is **GRANTED IN PART** and **DENIED IN PART** in accordance with the rulings herein.

Specifically,

**IT IS ORDERED** that Defendant LSBC's Rule 12(b)(6) motion to dismiss pursuant to the protections of Eleventh Amendment immunity is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Stockstill's 12(b)(6) motion to dismiss for failure to state a claim is **DENIED**; motion to dismiss based on absolute immunity is **DENIED**; motion to dismiss based on qualified immunity with respect to false imprisonment claims is **DENIED WITHOUT PREJUDICE** to reassert at a later stage in the proceedings if applicable; and motion to dismiss based on qualified immunity with respect to racial discrimination is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Keller's 12(b)(6) motion to dismiss for failure to state a claim is **GRANTED** with respect to Plaintiffs' claim of false imprisonment, but **DENIED** with respect to Plaintiffs' claim of racial discrimination in violation of the Fourteenth Amendment to the U.S. Constitution. Plaintiffs' claim for false imprisonment against Keller is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant Keller's 12(b)(6) motion to dismiss pursuant to the protections of absolute and qualified immunity is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant Young and Defendant Hand's 12(b)(6) motions to dismiss for failure to state a claim are **GRANTED**. All claims against Defendants Young and Hand are hereby **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 20th day of March, 2015.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**