# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOA T. NGUYEN, ET AL** | **CIVIL ACTION NO.: 3:14-cv-00080** |
| **VERSUS** | **JUDGE BRIAN A. JACKSON** |
| **LOUISIANA STATE BOARD OF COSMETOLOGY, ET AL** | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |

## LOUISIANA STATE BOARD OF COSMETOLOGY, SHERRIE STOCKSTILL, AND MARGARET KELLER'S, TRIAL BRIEF

MAY IT PLEASE THE COURT:

In accordance with the Court's scheduling order, Defendants, the Louisiana State Board of Cosmetology ("LSBC"), Sherrie Stockstill, and Margaret Keller (collectively, "LSBC Defendants" or "Defendants") submit this trial brief, demonstrating that none of the four remaining plaintiffs' claims against them passes muster under the applicable law and record of this case.

## I. INTRODUCTION AND OVERVIEW OF ARGUMENTS

Thoa Nguyen, Hien Hoang, Mai Thi Nguyen, and Uan Pham (collectively, "Plaintiffs"), are Asian-American nail salon owners, who have alleged, in essence, that the LSBC's inspectors and lawyer, and the LSBC itself, have "intentionally targeted" Plaintiffs' salons through heightened and more frequent inspections, citations, fines, and disciplinary hearings, *because* of their race. While Plaintiffs argue that the LSBC has "turned a blind eye" to its inspectors' and lawyer's alleged intentionally discriminatory actions, it is Plaintiffs who, in effect, urge the Court to penalize the LSBC for *not* turning a blind eye to Plaintiffs' conceded violations of Louisiana cosmetology laws, *because* of their race.

The record shows that each of the Plaintiffs has, in some way, admitted to the violations for which they were cited – although they conveniently argue that they never intended to do so. Specifically, two of the four Plaintiffs have signed consent agreements, expressly admitting fault. (One was represented by counsel, signed the consent agreement in his counsel's presence, and later admitted, in discovery, that he operated his salon without a license for nearly one year because he "didn't know" he needed a license.) Following an evidentiary hearing of the LSBC, the third plaintiff was found to have violated the law by operating her salon without applying for licensure -- after she purchased the salon from the prior owner whose license had been revoked by the LSBC for violations. Finally, while formal charges were never initiated against the fourth plaintiff, she failed to take advantage of the opportunity to challenge, in writing, the LSBC inspector's reported violations by her salon. All four plaintiffs received letters from LSBC Executive Director, Stephen Young, expressly giving them the opportunity to contest the alleged violations observed during the inspections. All four ignored the letters. There is zero evidence in the record, direct or circumstantial, that Defendants intentionally targeted Plaintiffs because of their race, as alleged. The LSBC is statutorily tasked with the responsibility of protecting public health, safety and welfare by ensuring that all cosmetology practitioners are properly trained, skilled and licensed to provide cosmetology services. Plaintiffs' bare assertions, couched as "evidence", that non-Asian salons – whom they have not established are similarly situated – were treated differently by the inspectors, are inadequate to carry their burden of proof in this matter.  All of Plaintiffs' claims fail and should be dismissed, because:

1.      *There was no equal protection violation*: Plaintiffs have failed to identify appropriate comparators (which is a prerequisite for proving that salon owners of Asian descent were treated differently under the Equal Protection Clause), have failed to – and cannot – prove that the Defendants intentionally targeted them because of their race, as alleged in their Complaint, and have failed to – and cannot – establish that there was no rational basis for any discriminatory impact or effect on Asian salon owners. For the same

2

reasons, they cannot overcome the individual Defendants' qualified immunity under applicable law.

2.     *There was no false imprisonment*: Because the Louisiana Cosmetology Act and pertinent provision of the Louisiana Administrative Code (collectively, "Louisiana Cosmetology Law(s)") authorize inspections of cosmetology facilities and define the scope of inspections, Thoa Nguyen has failed to prove that Ms. Stockstill's inspection, lasting approximately two hours, was unreasonable under the circumstances (the report and violation notices for the six violations had to be completed on site in order to be "presented" to the owners, as required by law), and cannot establish that the Cosmetology Laws authorizing inspections of cosmetology facilities do not put licensees on notice of inspections and/or do not operate as a substitute for a warrant.

3.     *There is no vicarious liability on the part of the LSBC, either vicarious or direct, under Section 1983*: Section 1983 bars Plaintiffs' claim of vicarious liability in the absence of proof of direct actions by the LSBC. Plaintiffs cannot prove the alleged failure to train or supervise, especially considering the absence of any policy or custom of the LSBC, which directs or endorses racial discrimination; nor can they establish an infringement upon any of their constitutionally protected rights.

## II.     WHY PLAINTIFFS' CLAIMS AGAINST THE LSBC DEFENDANTS FAIL

### A.  Plaintiffs' failed Equal Protection claims

#### 1.  General Equal Protection principles

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  Plaintiffs, who are Asian-American nail salons owners, have alleged that they are being discriminated against by the LSBC (and its agents) by being subjected to heightened and more frequent inspections, violations and fines than non-Asian salon owners "because" of their race. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."[1] The Fifth Circuit jurisprudence makes it clear that the equal protection clause "essentially" directs states to treat "all persons similarly situated"

---

[1] U.S. Const. amend. XIV, § 1.

alike.[2] "To state a claim of racial discrimination under the Equal Protection Clause and Section 1983, the plaintiff 'must allege and prove that [(1) he or she] received treatment different from that received by similarly situated individuals and that [(2)] the unequal treatment stemmed from a discriminatory intent.'"[3] Importantly, even when a plaintiff alleges a pattern of discrimination, as was present in *Yick Wo v. Hopkins*,[4] the Supreme Court's jurisprudence still requires proof of discrimination "between persons in similar circumstances,"[5] in order for plaintiff to prevail in his Equal Protection claim.

Under these well-established precepts, proof that similarly situated individuals were treated differently is a "prerequisite to an equal protection claim."[6] In particular, Plaintiffs' racial discrimination claim can only survive if they are able to prove that persons who are similarly situated were intentionally treated differently by the LSBC. This, they cannot do.

### 2. Plaintiffs have failed to establish that the proposed hair salon comparators are similarly situated as Plaintiffs.

As a preliminary matter, this is not a class action. As much as Plaintiffs may wish to "defend", or speak for, all Asian-American salon owners in Louisiana, this Court has declined to certify the class sought in the original complaint. Therefore, all generalized arguments raising complaints that are not specific to the four remaining Plaintiffs in this action should be rejected. Each of the remaining four Plaintiffs' claims must stand (and fall) on their own merits.

It is well established that "similarly situated" persons are those persons who are standing

---

[2] *Vera v. Tue*, 73 F.3d 604, 609 (5th Cir. 1996), citing *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, (1985).
[3] *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir.2004), quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir.2001)).
[4] *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).
[5] *Id*. at 373.
[6] *Lewis v. Ascension Parish School Bd.*, 72 F.Supp.3d 648, 664 (M.D. La. 2014).

4

in the same situation as the plaintiffs in relation to the challenged government action.[7] This Court recently acknowledged, in *Lewis v. Ascension Parish School Bd.*,[8] that "there is no precise formula to determine whether an individual is similarly situated to comparators."[9] However, this Court embraced the notion that the "similarly situated" inquiry "depend[s] substantially on the facts and context of the case," "is case-specific," and "requires [the court] to consider 'the full variety of factors that an objectively reasonable ... decisionmaker would have found relevant in making the challenged decision.' "[10]

In this case, the Court must initially determine whether the non-Asian salons identified by Plaintiffs are appropriate comparators – that is, whether they are "similarly situated" to the Plaintiffs under the facts and within the context of this case. Defendants submit that they are not. Under the standard set forth by the Fifth Circuit (and this Court), individuals similarly situated to the Plaintiffs would be non-Asian manicuring/nail salon owners who have operated their salons without a license, whose licenses were placed on probation, who did not take advantage of the opportunity to refute, in writing, the alleged violations identified during inspections and/or who signed consent agreements admitting to the alleged violations. None of the Plaintiffs' proposed comparators have been shown to fit any of those descriptions for two reasons: (1) Plaintiffs have compared themselves to hair salons which are not similarly situated as nail salons under the Louisiana Cosmetology Laws, and (2) Plaintiffs have offered no evidence to demonstrate that the proposed comparators are circumstantially similarly situated to the Plaintiffs.

---

[7] *Reynolds v. Sims*, 377 U.S. 533, 565 (1964) ("The concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged.")

[8] 72 F.Supp.3d 648, 665 (M.D. La. 2014); *affirmed* , 806 F.3d 344 (5th Cir. 2015); *cert. denied*, 136 S.Ct. 1662, (2016).

[9] *Id.* at 665*,* citing *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir.2012).

[10] *Id*., citing *Lindquist*, 669 F.3d at 233–34 (internal cites omitted).

*a.    Hair salons are inappropriate comparators under the Louisiana Cosmetology Law.*

Plaintiffs' proposal that the Court should compare Plaintiffs' nail salons to the proposed hair salon comparators purportedly because all salons under the control of the LSBC are "similarly situated" is self-serving and severely misguided. This flawed proposal is defeated by the fundamental difference between the several types of salons: the services each salon is allowed, by law, to provide to its patrons are limited by the scope of its license. Simply put, if License A is limited to services a, b, and c, the provision of services d, e and/or f (which are only permitted under License B) necessarily exceeds the scope of License A and amounts to a finable violation of that license under Louisiana's Cosmetology Law. Plaintiffs' proposed apples-to-oranges comparison should be rejected. Further, the training and skill sets that are required for one to become a licensed manicurist are limited to manicuring/nail care services and, by law, are far more limited than that which is required to obtain a cosmetology/hair or esthetics license. In particular, while the practice of cosmetology encompasses manicuring, hairdressing and esthetics services, each branch entails a separate set of skills suited for the provision of a specific service which varies from one branch to the next.[11] Further, under LAC Title 46 Part XXI, the training or course requirements for a cosmetologist (a curriculum consisting of at least 1500 hours of instruction)[12] are far broader and extensive than those that are applicable to a manicuring course (a curriculum consisting of 500 hours of instruction).[13] Section 705 sets forth the equipment required at a salon offering hairdressing services,[14] which are different from that which is required in salons offering

---

[11] *See* La. R.S. 37:563 (defining "cosmetology", "esthetics", "hairdressing" and "manicuring", *inter alia*.)
[12] LAC 46:XXI, § 301.
[13] *Id*. at Section 305.
[14] LAC Title 46:XXI, §705.

1468174.v1

manicuring services, under Section 709.[15] It follows, thus, that a practice or service that falls outside the scope of a manicurist's license may be permissible under a cosmetology (hair salon) or an esthetics license, and, therefore, would not amount to a violation of the Cosmetology laws or require the imposition of fines or an administrative hearing. Hair salon owners are, therefore, not "similarly situated" as, and are not appropriate comparators for, Plaintiffs, nail salon owners, under the law.

> b.  *Plaintiffs also admit that they have no evidence to show that the proposed comparators are similarly situated.*

Even if the Court were to decide that hair salons are similarly situated to nail salons and appropriate comparators, Plaintiffs have failed to show that hair salons have been treated differently with respect to violations, as they have failed to present any evidence that hair salons have provided services outside the scope of their licenses, operated without a license or were placed on probation (which Plaintiffs previously acknowledged would have subjected them to more frequent inspections)[16] after signing consent judgments wherein they admitted the alleged violations.  Plaintiffs admitted in discovery that they have not even inquired into the hair salons' licensure and/or violation status.

Thoa Nguyen's comparator : Salon 411.

Thoa Nugyen d/b/a Exotic Nails alleges that she had been running her business for the last three years without any previous problems or violations prior to the July 19, 2013 inspection by LSBC inspectors Sherrie Stockstill and Debra Ashmore.[17] She claims that, on that day, those two inspectors were "unabashedly authoritative;"[18] suddenly shouted, "Everyone, keep still, don't

---

[15] LAC Title 46:XXI, §709.
[16] *See* Plaintiffs' Opposition, R. Doc. 167-1, p. 4.
[17] Complaint, R. Doc. 1 ¶ 7.
[18] Complaint, R. Doc. 1 ¶ 8.

move!" and, for approximately the next two hours, "prohibited Mrs. Nguyen and her employees from leaving" while the inspectors "proceeded to open doors, search compartments, sift through files."[19] She further alleges that the salon next door owned by a Caucasian and its employees have never been subjected to harassment, intimidation, or false imprisonment by Board inspectors.[20] In discovery, Thoa Nguyen revealed that the "Caucasian owner next door" referenced in the Complaint, is one Brittany Callette who owns a hair salon called Salon 411.[21] Thoa Nguyen admitted to not knowing how often Salon 411 was inspected[22], has not shown whether or not Salon 411 exceeded the scope of its hair license, or that individuals have exited the salon through the back door during an inspection by the LSBC, as was the case in Ms. Nguyen's salon.[23]

    <u>Mai Nguyen's comparator: unspecified</u>.

    Mai Thi Nguyen d/b/a Nu Nails alleges that, on or around August 14, 2013, she purchased Nu Nails from its former owner, Ms. Thu Nugyen d/b/a Bamboo Nails, who had operated her business in violation of the law prior to the sale of the business to Mai Thi Nugyen. She further alleges that when Ms. Stockstill inspected Nu Nails, she "was quick to judge" and "assumed Ms. Mai Nguyen was colluding with the previous owner, Ms. Thu Nguyen to circumvent the cease and desist order."[24] She then alleges that her application for licensure "was delayed for months because LSBC believed she had obtained the business by means of fraud, misrepresentation, or concealment of truth;" and that the LSBC later found, following the December 9, 2013 hearing,

---

[19] *Id*. at ¶ 8.
[20] *Id*. at ¶ 22.
[21] Plaintiffs' Second Amended Supplemental Responses to Interrogatories (witness list), Trial Exhibit 87, p. 7 of 11. *See also* Deposition of Thoa Nguyen, R. Doc. 162-5, pp. 348-349 (MSJ Exhibit 13, pp. 106:17 -107:17). Plaintiffs' witness list, produced in discovery, also reveals several names of proposed non-Asian comparators, including Graffiti Hair Studio, Michael Marie Salon, Kelli & Co. Salon, Marcelite Salon, each of which Plaintiffs identify as "non-Asian owned hair salons". Trial Exhibit 87.
[22] Thoa Nguyen Deposition, R. Doc. 162-5, p. 349 (MSJ Exhibit 13, p. 107:13-17).
[23] Thoa Nguyen Deposition, R. Doc. 162-5, pp. 346-347 (MSJ Exhibit 13, pp. 80:20-25 - 81:1-5; *see also* p. 81:23-25).
[24] Complaint, R. Doc. 1-1 ¶ 11.

that she had lawfully bought the business from Thu Nguyen.[25] Mai Nguyen concludes that she "believes [her] business application was delayed solely because [she was] Vietnamese American"[26] and/or "because the previous owner and her were both Vietnamese-Americans."[27]

While Mai Nguyen did not identify any specific salon as comparator, the Plaintiffs' collective witness list only reveals names of non-Asian hair salons as proposed comparators.[28] Mai Nguyen was cited for operating her salon without a license on the date of inspection on or about August 2013. She admitted during her deposition that she did not receive her certificates of registration from the LSBC until January 8, 2014., i.e., after her salon was inspected and cited for operating without a license.[29] She then admitted that she has no evidence as to whether *any* non-Asian salons were cited (or not cited) for operating a salon without a license.[30] Mai Nguyen has also provided no evidence that she has identified any circumstances in which a non-Asian salon owner, whose license had been revoked, sold his/her business to another non-Asian owner, and the subsequent owner operated the business before obtaining a license – while a third-party applied for a license to operate the same business.[31] She has, thus, failed to identify an appropriate comparator.

<u>Hien Hoang's comparator: Graffiti Hair Studio</u>[32]

Hien Hoang d/b/a Magic Nails alleges that on or about February 2011 – which date Mr.

---

[25] *Id.*
[26] Complaint, R. Doc. 1-1 ¶ 24.
[27] *Id.* at ¶ 11.
[28] Plaintiffs' Second Amended Supplemental Responses to Cangelosi's Interrogatories (witness list), Trial Exhibit 87.
[29] Mai Thi Nguyen Deposition, R. Doc. 162-8, p. 41 (MSJ Exhibit 69, p. 13:16-25).
[30] *Id.*, p. 42 (MSJ Exhibit 69, p. 66:2-6).
[31] *See* Trial Exhibit 77.
[32] Deposition of Hien Hoang, Vol. 2, R. Doc. 162-5, p. 364 (MSJ Exhibit 14, p. 165:8-11) (indicating that the name of the salon was Gravity Hair, not Gravity nail). Mr. Hoang later corrected the error in the name of the hair salon in Plaintiffs' Second Amended Supplemental Responses to Cangelosi's Interrogatories (witness list), Trial Exhibit 87. The name is not "Gravity" as he indicated in his deposition, but "Graffiti Hair Studio". *Id.*

Hoang later corrected to March 2012[33] – Sherrie Stockstill entered Magic Nails for an inspection.[34] He further charges that Stockstill "ordered" Mr. Hoang to stop what they were doing, produced their drivers' licenses and remain where they were; that she forced the shop to shut down and issued violations; and that Stockstill returned two additional times with the same "authoritative, bashful, and rude" demeanor.[35] He further alleges that he has attended several LSBC hearings and expended substantial funds to defend the alleged violations.[36]

Hien Hoang admitted to having zero evidence to establish the similarity between the respective licensure of Magic Nails and Graffiti Hair Studio. After first admitting that he operated Magic Nails without a license from the Summer of 2010 through March 2012[37] -- because "he didn't know" he needed a license from the LSBC[38] -- Hien Hoang testified that he does not know whether Graffiti Hair Studio ever operated without a license or licensed technician and does not know of any violations by Graffiti Hair Studio.[39]

Uan Pham's comparator: unspecified

Uan Pham d/b/a Elegant Nails #2 alleges that on or August 28, 2013, Sherrie Stockstill "stormed into his business, was disrespectful toward Mr. Pham and the patrons, cited him for having waxing equipment on the premises, and that he felt pressured to sign the citation report.[40] He further alleges that Ms. Cangelosi "persisted" to send him written demands to pay the violation fees or be summoned to a Rule to Show Cause hearing, and that he has never been cited by the LSBC for any violations prior to this incidence. He believes he was subject to the Board's

---

[33] Deposition of Hien Hoang, Vol. 2, R. Doc. 162-5, p. 360 (MSJ Exhibit 14, p. 116:15-19) (admitting that the March of 2012 inspection was the very first inspection that the State Board of Cosmetology had ever made of Magic Nails).
[34] Complaint, R. Doc. 1-1 ¶ 10.
[35] *Id.*
[36] *Id.*
[37] Deposition of Hien Hoang, Vol. 2, R. Doc. 162-5, pp. 359-360 (MSJ Exhibit 14, p. 115:2 through 116:14).
[38] *Id*. p. 359 (MSJ Exhibit 14, p. 115:19-20).
[39] *Id*. at p. 357 (MSJ Exhibit 14, 101:20-22).
[40] Complaint, R. Doc. 1-1 ¶ 16.

inspection because of his race. During discovery, in response to the request to provide evidence which supports the contention that his salon was "subject to the Board's inspection because of [his] race", Uam Pham stated: "I asked my customers who also went to another non-Asian-owned salon if they saw any inspectors there. They all said never…"[41] When asked to provide documentary support for that contention, he stated, in part: "There is a hair salon that is owned by a non-Asian owner with [sic] my area but they were never inspected."[42] Uan Pham admitted that he was unable to identify, and had never spoken to, any non-Asian owned salons which were inspected less than his;[43] nor could he identify any of the customers who allegedly told him that they never saw inspectors at the non-Asian salons they have gone to.[44]

By law, Plaintiffs have to prove that the proposed comparators were treated differently as a "prerequisite" to prevailing on a claim of discrimination.[45] The lack of proof of differential treatment between Plaintiffs and their proposed comparators is fatal to Plaintiffs' claims.

### c. *Plaintiffs' generalized and unsupportable percentages*

In addition to the proposed comparators – whose licensure and violation status Plaintiffs have admittedly failed to ascertain – Plaintiffs have offered general and unexplained percentages based upon incompetent/unauthenticated evidence and questionable calculations, in a desperate attempt to show purported intentionally-disparate treatment of Vietnamese-owned salons by the LSBC.[46] Plaintiffs' proffered percentages of fines imposed on Vietnamese as compared to non-

---

[41] Uan Pham's Response to Interrogatory No. 13, Trial Exhibit 49.
[42] Uan Pham's Response to Request for Production of Documents No. 8, Trial Exhibit 49.
[43] Deposition of Uan Pham, R. Doc. 162-6, pp. 174, 173 (MSJ Exhibit 42, p. 105:11-19; p. 102:3-8).
[44] Deposition of Uan Pham, R. Doc. 162-6, pp. 171-172 (MSJ Exhibit 42, p. 98:16 through p. 99:5).
[45] *Lewis v. Ascension Parish School Bd.*, 72 F.Supp.3d 648, 664 (M.D. La. 2014).
[46] Plaintiffs' proffered percentages (R. Doc. 167-1, pp. 3-4, 6,12-13 and Plaintiffs' Fact no. 4 in R. Doc. 167-2) seem to be based upon, and vary from, number of salons, to number of violations, to combined yearly dollar amounts of violations, without proper explanation. Worse, Plaintiffs' documentary support for these slanted and questionable percentages (R. Docs. 114-8 and 114-9; *see also*, Plaintiffs' Trial Exhibits P8-P12) in itself is confusing and simply unreliable. Although this is not clear because of the strange format of the documents, documents 114-8 and 114-9

Vietnamese are misleading, at best. Defendants objected to the proffered numbers and percentages and to the use of Plaintiffs' spreadsheets, R. Docs. 114-8 and 114-9, and moved the Court to exclude them from evidence in advance of trial, through a properly-raised motion in limine.[47] (R. Doc. 184.)

Nonetheless, even if the Court were to accept as true Plaintiffs' proffered percentages of fines imposed upon Vietnamese versus non-Vietnamese salons, those numbers fail to establish any alleged disparate treatment of the Plaintiffs' salons as compared to hair salons – absent similar factual circumstances between Plaintiffs and the proposed comparators. The dollar amount of the fines imposed upon violators depends upon the nature of the violation and the circumstances surrounding such violation. For instance, some violations (including salon cleanliness or the failure to post or renew one's license) are considered to be minor violations, warranting the imposition of a $25 fine.[48] Conversely, other violations (including the provision of service beyond the scope of one's license or hiring unlicensed operators, for example) require a board hearing.[49] For the latter category, the fines are greater and dependent upon statute-based (and race-neutral) factors, such as: whether there was proof or admission of violation during an LSBC hearing, the number of

---

[47] appear to be re-worked and re-categorized versions of the spreadsheet of LSBC fines produced in discovery by the LSBC (Trial Exhibit 89) and/or the re-sorted one Plaintiffs' attached to Steve Young's deposition (Trial Exhibit 88). *Compare* R. Docs. 114-8 and 114-9 *and* Defendants' Trial Exhibits 88 and 89. However, as best as Defendants can tell from a careful review of those documents, some data has been <u>added</u> (namely, yearly totals) and some data has been <u>omitted</u> (including, some names of individual manicuring, esthetics, and cosmetology licensees, namely, Kim Grabski, Brandi Troxler, Bieu Ho, and others; as well as an entire category of licenses, namely, salon/shop licenses). Due to the questionable formatting of Plaintiffs' documents, Defendants are unclear as to what other alterations may have been made to the original spreadsheet(s) and submit that those documents are unreliable and incompetent evidence.

[47] Defendants also point the Court to Plaintiffs' argument supposedly based on the deposition of Frances Hand, that Vietnamese pay "3,000 percent more than non-Vietnamese owned salons." R. Doc. 167-1, p. 6. When asked about this unfounded percentage, Ms. Hand unequivocally testified that she "doesn't know that that's happened." Hand Deposition, R. Doc. 167-7, p. 37 (Plaintiffs' Opposition Exhibit 5, p. 35:3-22). There is, therefore, no support for this assertion by Plaintiffs.

[48] Steve Young's Deposition, R. Doc. 162-5, p. 87 (Defendants' MSJ Exhibit 1, p. 87:6-12).

[49] *Id.* at pp. 85-86, 124 (Defendants' MSJ Exhibit 1, pp. 85:11 – 86:22, and p. 124:24-25). *See also* Sherrie Stockstill's Deposition, R. Doc. 167-9, p. 65 (Plaintiffs' Opposition Exhibit 7, p. 63:14-19); and Waxing Paraphernalia Memo (Trial Exhibit 82).

12

violations, the duration of each violation, and the cost of the hearing, where applicable.[50] Plaintiffs cannot merely argue that they have had to pay disproportionately higher fines than non-Asian salons, without evidence that the proposed comparators violated the same Cosmetology Laws and/or related LSBC rules, that they failed to challenge the alleged violations in writing, and/or admitted to the violation(s) through consent decree(s). Because there is no evidence of discriminatory treatment of Plaintiffs as compared to the non-Asian hair salons, Plaintiffs' claims must be dismissed.

Incidentally, Plaintiffs' assertion that the LSBC "only regulates the practice of 'manicuring'" is without merit or basis.[51] Plaintiffs have offered not a single shred of evidence tending to prove that the LSBC does not regulate cosmetology and esthetics salons. To the contrary, the record is clear that all salons (across disciplines) are inspected (although the number of yearly inspections increases based on factors such as complaints and licensure issues), and that violations are issued and violators are fined, where merited.[52] Manicuring salons are not a protected class. The blatant lack of proof of intentional discrimination based on race (as opposed to license) specifically against the four Plaintiffs, is fatal to Plaintiffs' race discrimination claims. They cannot be maintained.

### 3. Lack of intentional race-motivated disparate treatment or impact

Plaintiffs' inability to prove that the non-Asian hair salon owners are similarly situated is fatal to their racial discrimination claim as there is no basis upon which to prove disparate treatment in the absence of appropriate comparators. The Fifth Circuit has recognized, albeit *in dicta*, that

---

[50] *See* La. R.S. 37:601 and La. R.S. 37:604; and see LAC 46:XXXI § 903. For the Court's reference, these statutes are included in the LSBC Goldbook, Trial Exhibit 81.
[51] R. Doc. 167-1, p. 3.
[52] *See e.g.*, Spreadsheet of Fines, Trial Exhibit 89, showing fines assessed across disciplines and licenses.

an allegation that another group was not subjected to the same treatment "is insufficient to show disparate treatment where plaintiffs have failed to allege any facts showing that [the other group] was similarly situated."[53] The same principle applies even when, as here, Plaintiffs claim a pattern of discrimination or uneven application of a facially-neutral law.[54] Plaintiffs cannot escape their burden of establishing discrimination between persons in similar circumstances.[55] Given the absence of appropriate comparators, dismissal of Plaintiffs' claims is proper.

Even if the Court were to consider Plaintiffs' contention that they were treated differently from non-Asian salons, Plaintiffs' so-called evidence of unequal treatment falls short of the standard required under the Fourteenth Amendment. A violation of the Equal Protection Clause requires governmental action which classifies or distinguishes between two or more relevant persons or groups.[56] "[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws."[57] "When a government action is facially race neutral and there is no proof of either discriminatory purpose or discriminatory effect, that action is subject to rational basis review. […] On rational basis review, the burden is on the challenger to rebut the 'strong presumption of validity' accorded the action and prove that the action is not rationally related to a legitimate government purpose."[58] The Fifth Circuit cautions in *Coleman v. Franklin Parish Sch. Bd.*,[59] that "**the equal protection clause is not violated solely because an**

---

[53] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009).

[54] *Yick Wo*, at 373.

[55] *Id*.

[56] *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir.1988).

[57] *Brennan*, 834 F.2d at 1257.

[58] Rational basis, and not strict scrutiny (as Plaintiffs alleged in paragraph 19 of their Complaint), is the applicable standard where, as here, "there is no proof of either discriminatory purpose or discriminatory effect," and "the burden is on the challenger to rebut the 'strong presumption of validity' accorded the action and prove that the action is not rationally related to a legitimate government purpose." *Lewis v. Ascension Parish School Bd.,* 806 F.3d 344, 663 (5th Cir. 2015); *cert. denied*, 136 S.Ct. 1662, (2016)*,* quoting *Heller v. Doe,* 509 U.S. 312, 319–20 (1993).

[59] 702 F.2d 74, 77 (5th Cir. 1983) (emphasis added).

**action had a racially disproportionate impact if it is not motivated by a racially discriminatory purpose**." Relying on Fifth Circuit precedent, this Court made it clear in *Lewis, supra*, that:

> [T]he Supreme Court has "rejected the idea that 'a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than another.' " [...] Indeed, "[d]isproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule ..." [...] As such, evidence that a greater proportion of at-risk students attend majority nonwhite schools, without more, is unavailing.[60] [Internal cites omitted]

While Plaintiffs have alleged that they are treated differently (more frequently inspected, mistreated, and cited and fined for violations) because of their race, as compared to non-Asian salon owners, they have failed to adduce competent evidence of such disparate treatment, as required by law.

### a.   Lack of proof of intentional discrimination in inspections and violations issued

Although Plaintiffs allege that they are subjected to heightened and more frequent inspections and are more frequently cited for violations and fined, the record of this case does not support such allegations. The LSBC has shown (in discovery) that it only issues a fraction of violations in comparison to the volume of inspections conducted each year across cosmetology disciplines – and without regard to race. This is evident from the table provided by the LSBC in discovery:[61]

---

[60] *Lewis,* 72 F.Supp.3d at 668.
[61] *See* LSBC's Supplemental Responses to Plaintiffs' discovery requests, Trial Exhibit 80, Answer to Interrogatory No. 2. As explained in LSBC Supplemental Response: "Number of Inspections Performed and Violations Issued [are] for January 1, 2001 through November 30, 2001. Number of Inspections Performed and Violations Issued [are] for January 1, 2002 through September 30, 2002." *Id.*

1468174.v1

| Year | Inspections Performed | Violations Issued |
|------|----------------------|-------------------|
| 2000 | 11,987 | 617 |
| 2001* | >13,993 | >1038 |
| 2002* | >12,511 | >939 |
| 2005 | 11,424 | 1,024 |
| 2006 | 12,345 | 1,096 |
| 2007 | 13,718 | 1,113 |
| 2008 | 12,825 | 1,045 |
| 2009 | 14,502 | 1,298 |
| 2010 | 15,087 | 1,143 |
| 2011 | 15,080 | 1,354 |
| 2012 | 13,997 | 1,182 |
| 2013 | 12,462 | 980 |
| 2014 | 10,634 | 1,017 |

In Louisiana, there are approximately 7,500 salons across all disciplines, approximately 900 of which are nail/manicuring salons.[62] Stephen Young's sworn deposition testimony makes it clear that the LSBC does not classify licensees based on race or ethnicity[63] and that there is no tracking system to determine the race, nationality or ethnicity of salon owners.[64] While LSBC inspectors generally conduct bi-yearly (regular) inspections of <u>all</u> salons,[65] in some cases, salons are inspected more frequently, including in instances where there are requests for inspections, violations were found during a prior inspection, complaints are received regarding particular salons,[66] and/or a salon is placed on probation. In the latter case, inspections are required every quarter or bimonthly.[67] All of the Plaintiffs' salons had violations, which, in all cases, were conceded and/or admitted; and Magic Nails, Nu Nails, and Elegant Nails #2 were all either ordered

---

[62] Deposition of Stephen Young, R. Doc. 162-5 p. 35 (MSJ Exhibit 1, p. 35:5-13; and p. 35:14-17) (where Young estimates there are "between 850 and 900").
[63] *Id*. at p. 168 (MSJ Exhibit 1 p. 168:13-15).
[64] *Id*. and p. 170-171 (MSJ Exhibit 1 p. 170:22 through 171:1).
[65] Deposition of Stephen Young, R. Doc. 162-5 p. 36 (MSJ Exhibit 1, p. 36:13-20) (emphasis added).
[66] *Id*. at p. 82 (MSJ Exhibit 1, p. 82:14-24). Incidentally, LSBC inspectors often receive Asian-on-Asian complaints where an Asian salon owner or manicurist contacts the LSBC, complaining that specified competitor Asian salons are hiring unlicensed manicurists and paying them less, thereby affecting the licensed complainant's ability to find jobs. Deposition of Margaret Keller Deposition, R. Doc. 162-5 p. 53, 54 (MSJ Exhibit 70, p. 90:6-22 and p. 92). Ironically, Asians are contributing to the frequency of inspections of Asian salons.
[67] 2005 Inspector Workshop, Trial Exhibit 83.

to cease and desist and/or placed on probation.[68] <u>There is no evidence that the proposed non-Asian comparators are similarly situated as Plaintiffs from a licensure and violation standpoint, making it impossible to determine whether Plaintiffs are, in fact, being treated differently than their non-Asian counterparts on account of their race.</u>

In any event, it is estimated that the majority of nail salon owners (more than 80%) are Asian-Americans.[69] According to Mr. Young, the number of nail salons increases every year "by about one hundred salons per year."[70] It is conceivable, as a result purely of demography (and more particularly, the disproportionate and increasing number of Asian-owned nail salons), that any sampling of inspection reports, violation notices and/or reports of fines related to nail salons, will tend to yield a greater percentage of Asians as compared to non-Asians. As Mr. Young testified, however, violations cannot be ignored -- no matter the nationality, race, or ethnicity of the owner of the violative salon.[71] Where violations are found, the LSBC "would be breaking the law" – and shirking its regulatory function – by ignoring the violations.[72] Conjecture and guesswork, based on names of salon owners, regarding Asian/non-Asian percentages is not competent evidence, and is not probative. Nevertheless, even if shown, disparate impact or effect alone is insufficient to sustain a claim under the Equal Protection Clause, as a matter of law.

Parenthetically, Plaintiffs' complaints that Ms. Stockstill was authoritative, rude or disrespectful during her inspections are insufficient to establish discriminatory intent. Even assuming that Ms. Stockstill is somehow unjustifiably authoritative or rude during her inspections, such behavior is non-actionable.[73] Not a single Plaintiff alleges that Ms. Stockstill expressly or

---

[68] *See* Trial Exhibits 12, 13, 14, 15, 60, 47, 48.
[69] Deposition of Stephen Young, R. Doc. 162-5, pp. 35-36 (MSJ Exhibit 1, p. 35:24 through 36:6).
[70] *Id.* at pp. 154 (MSJ Exhibit 1, p. 154:19-25).
[71] Deposition of Stephen Young, R. Doc. 162-5, pp. 152 (MSJ Exhibit 1, p. 152:6-10).
[72] *Id.*
[73] "Discourtesy or rudeness should not be confused with racial harassment, and a lack of racial sensitivity, alone, does not amount to actionable harassment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). While generally

impliedly alluded to their race or otherwise used racial profanity during her inspections. Moreover, Plaintiffs' references and quotes (or misquotes) of bits and pieces of the deposition testimony of Sherrie Stockstill out of context and their unfounded arguments and inferences based on such misquotes and mischaracterizations also fail to show intentional discrimination. For instance, Plaintiffs' criticism of Ms. Stockstill's testimony that salons that are cited the most for hiring non-licensed operators are nail/manicuring salons is unavailing.[74] This is a fact which is corroborated by an LSBC enforcement update, where the LSBC noted (and Plaintiffs do not contest this) that the "most common violation has been unlicensed individuals performing manicures and pedicures."[75] Plaintiffs offered no evidence tending to establish that unidentified allegedly-wrongfully-cited Asian salon owners did not, in fact, hire unlicensed operators. Plaintiffs' own salons, cited for hiring unlicensed operators, either failed to contest this violation in writing (as required by law)[76] or expressly admitted this violation. Plaintiffs' reliance on Ms. Stockstill's testimony is misplaced, as such testimony (even when mischaracterized and taken out of context) does not prove, or tend to prove intentionally discriminatory treatment by the LSBC inspectors.

In any event, Ms. Stockstill's purportedly "racial remarks" during her deposition are no more than "stray remarks," which are insufficient (direct) proof of discriminatory intent where the remarks are so remote in time, and do not relate, to the conduct complained of under Fifth Circuit jurisprudence.[77] Ms. Stockstill was deposed in January 2016 deposition, <u>two to three years</u> after

---

applied in the sexual harassment context in employment cases, this principle reasonably applies in the equal protection context where the Fifth Circuit has found that even the use of racial profanity (not alleged to have occurred in this case) does not amount to race discrimination without an allegation that the speaker *stated* that he was targeting a business *because* of its owner's race. *Club*, 568 F.3d at 213.

[74] Stockstill Deposition, R. Doc. 167-9, p. 67 (Plaintiffs' Opposition Exhibit 7, p. 65:11-16).

[75] December 2005 LSBC Inspector Workshop, Trial Exhibit 83. *See* Fact no. 13, R. Doc. 162-2. Plaintiffs do not dispute the fact that the most commonly found violation was non-licensed individuals performing manicuring services.

[76] *See* LAC 46:XXXI § 903 (C).

[77] *See*, *Stone v. Par. of E. Baton Rouge*, 329 F. App'x 542, 545 (5th Cir. 2009); *Trotter v. BPB Am., Inc.*, 106 F. App'x 272, 276 (5th Cir. 2004); *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001); and *Dolores L. Williams v. Clegg's Nursery, LLC, Et al.*, 2016 WL 3702978, *13 (M.D. La. July 7, 2016).

she inspected and cited the Plaintiffs' nail salons.[78] There is simply no temporal connection between the conduct complained of and the remarks she made during her deposition such that they do nothing to further Plaintiff' claims. Not a single Plaintiff alleged that Ms. Stockstill made racially derogatory comments at the time of inspections.[79] Likewise, there has been no evidence that this inspector's inspections and cited violations (by the salons) were inconsistent with the Cosmetology Act or related LSBC rules and directives.

### b. Lack of evidence of intentional discrimination in connection with hearings

Only Mai Thi Nguyen and Hien Hoang participated in an administrative hearing.[80] The charges against Thoa Nguyen were never initiated.[81] Uan Pham signed a consent agreement obviating any need for a hearing.[82] Nonetheless, Plaintiffs have collectively asserted (without any competent evidence whatsoever) that Asian nail salons owners are disproportionately subjected to administrative hearings, relying *solely* on LSBC meeting agendas for the proposition that more Asians than non-Asians are being summoned for administrative hearings.[83] Reliance on the meeting agendas on their face – without confirming the respondents' race and without consideration, for example, of the multiple appearances by the same respondents due to continuances – is insufficient and probative of nothing whatsoever. Defendants have briefed this

---

[78] Aside from Stockstill's first 2 inspections of Magic Nails in March and August 2012, respectively, all other inspections of the Plaintiffs' salons were conducted in 2013. *See* Inspection Reports and Notices of Violation, Trial Exhibits 7, 11, 15, 18, 40, 59.

[79] *See* Defendants' Memorandum in Support of Motion for Summary Judgment, R. Doc. 162-1, p. 20.

[80] *See* Plaintiff's Response to LSBC discovery, Trial Exhibits 38. *See also*, Findings of Fact dated December 9, 2013, Trial Exhibit 77.

[81] *See* Cangelosi Declaration, Trial Exhibit 90.

[82] *See* Consent Agreements, Trial Exhibits 47 and 48.

[83] *See* Expert Report of Vietquynh H. Pham, R. Doc. 148-3, p.1. *See also* Deposition of Vietquynh H. Pham (R. Doc. 148-4), p. 13:11-15, where he admits that:

> Q. You're telling me that the sole thing that you were asked to do in this case is to review these agendas, look at the names and determine which of these names were Vietnamese?
>
> A Yes, Sir.

point extensively in their Motion in Limine to Exclude Plaintiffs' Expert Witness and supporting

memorandum and incorporate, by reference, their arguments herein.[84]

      *c.   Lack of evidence of intentional discrimination in the enforcement of the LSBC's waxing*
          *directive.*

Plaintiffs also argue that the LSBC's directive regarding the prohibition of waxing

paraphernalia within all nail salons (whether Asian owned or not) constitutes discriminatory

enforcement of a facially-neutral provision. This argument, too, is wrong. According to Steve

Young, the rule or directive regarding the waxing equipment was implemented by the Board, after

the first person was found waxing in a nail shop and a violation had to be written.[85] Indeed, since

2005, an enforcement update of the LSBC indicated that "another common violation [next to

unlicensed individuals performing manicures and pedicures] has been manicurists performing

services outside of their scope of practice – waxing." The implementation of a directive prohibiting

this practice, two years after it was reported to be one of the most commonly found violations in

manicuring salons was both reasonable and non-discriminatory. As previously briefed, this Court,

relying on Supreme Court precedent, has unequivocally rejected the idea that: "a law, neutral on

its face and serving ends otherwise within the power of government to pursue, is invalid under the

Equal Protection Clause simply because it may affect a greater proportion of one race than

another.'"[86] Mr. Young explained the intent behind the rule prohibiting waxing paraphernalia in

nail salons.[87]

Adoption (and enforcement) of a policy preventing a licensee who is trained only in nail

care from providing a skin care-related service which falls strictly under an esthetics or

---

[84] *See* R. Doc. 148 and attachments.
[85] Young Deposition, R. Doc. 162-5, p. 65 (MSJ Exhibit 1, p. 65:9-16).
[86] *Lewis v. Ascension Parish School Bd.*, 72 F.Supp.3d 648, 668 (M.D. La. 2014).
[87] Young Deposition, R. Doc. 162-5, p. 63-64 (MSJ Exhibit 1, pp. 63:24- 64:11).

1468174.v1

cosmetology license (i.e., a service in which a manicurist is neither trained nor possess the appropriate licensure) is wholly consistent with the LSBC's duty to regulate licensure and protect the health and welfare of Louisiana nail salons patrons. Plaintiffs' proposition that they should be allowed to store waxing paraphernalia in their nail salons, because mere storage or possession of the waxing equipment does not violate the Cosmetology Act (although it violates the LSBC directive), is meritless. There is no reason why a nail salon should need to keep equipment (used strictly for a prohibited service) within the premises. More importantly, however, if this race-neutral directive disproportionately impacts Asian nail salon owners, because the vast majority of nail salons are Asian-owned, this impact alone does not tend to prove actionable discrimination under the Equal Protection Clause. The intent and purpose behind the directive was devoid of discriminatory intent or purpose, and Plaintiffs have failed to offer any competent evidence to the contrary.[88] Consequently, Plaintiffs' claims of racial discrimination based on the Equal Protection Clause necessarily fail.

### B.     Thoa Nguyen's failed claim of false imprisonment against Stockstill[89]

This Court has previously ruled that Plaintiffs' false imprisonment claims remain intact only against Sherrie Stockstill (R. Doc. 63). As to her, Plaintiff Thoa Nguyen d/b/a Exotic Nails alleges that Stockstill told everyone not to move and prohibited Nguyen or her employees from leaving the salon for approximately two hours while Sherrie Stockstill and inspector, Debra

---

[88] Plaintiffs' reliance on *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) is misplaced. *See* R. Doc. 167-1, p. 5. Plaintiffs themselves note that in *Yick Wo*, "[a]lthough workers of Chinese descent operated 89 percent of the city's laundry businesses, not a single Chinese owner was granted a permit." *Id*. Clearly, that case is inapposite, because the Plaintiffs in this case were all licensed nail salon owners at the relevant times. More importantly, *Yick Wo* emphasizes that the "illegal discrimination" must be "between persons in similar circumstances," (*Id*., citing *Yick Wo*, at 373) -- a fact that Plaintiffs have failed to (and cannot) establish in this case.

[89] The false imprisonment claim against Margaret Keller has been dismissed (R. Doc. 63). The other three plaintiffs, Hien Hoang, Uan Pham and Mai Nguyen all admitted in discovery that they are not asserting claims of false imprisonment. *See* Responses to RFA, Trial Exhibit 38, No. 22 by Hien Hoang; Responses to RFA, Trial Exhibit 79, No. 12 for Mai Nguyen; and Response to RFA, Trial Exhibit 50, No. 3 by Uan Pham.

1468174.v1

Ashmore (a non-party) "proceeded to open doors, search compartments, sift through files."[90] She claims, on this basis, that Stockstill falsely imprisoned her.

The essential elements of the tort of false imprisonment are: (1) detention of a person; and (2) the unlawfulness of such detention.[91] In order to establish a cause of action for false imprisonment under Section 1983, a party must also show that the defendant, while acting under color of state law, deprived him of a right secured by the Constitution and laws of the United States. It is well settled that administrative searches are well-known exceptions to warrant requirements.[92] While searches of private homes generally must be conducted pursuant to a warrant, legislation authorizing warrantless administrative searches of commercial property does not necessarily violate the Constitution. Under the widely recognized exception to the warrant requirement, a warrant may not be constitutionally imperative when "warrantless searches are necessary to further a regulatory scheme and the … regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes."[93]

The Supreme Court, in *New York v. Burger,* summarized the circumstances under which a warrantless inspection would be deemed reasonable.[94] Three criteria must be met:

(1) There must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made.

(2) The warrantless inspection must be necessary to further the regulatory scheme.

(3) The statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant.

---

[90] R. Doc. 1-1 ¶ 8.
[91] *Tabora v. City of Kenner*, 94-613, (La. App. 5 Cir. 1/18/95), 650 So.2d 319; *Barry v. Dennis*, 93-1301 (La. App. 4 Cir. 2/25/94), 633 So.2d 806.
[92] See *New York v. Burger*, 482 U.S. 691 (1987).
[93] *Donovan v. Dewey,* 452 U.S. 594, 101 S. Ct. 2534, 2539 (1981).
[94] *Burger*, 482 U.S. 691 (1987).

The Court has elaborated on the third requirement, stating that the "regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officer."[95] Even where "statutes could have been more comprehensive and defined," the notice requirement is satisfied where they "permit an[ ] owner ... to be aware that he would be subject to warrantless" action.[96] Under Fifth Circuit precedent, a statute provides a constitutionally adequate substitute for a warrant where it was limited in place and scope, even if it permits inspections "as often as deemed necessary."[97]

Stockstill's inspection of Thoa Nguyen's salon in this case falls within the exception to the warrant requirement of the Fourth Amendment and was reasonable in light of the *Burger* analysis, as all three prongs of the *Burger* analysis have been met. First, the inspection of nail salons serves a substantial state interest – to promote, preserve, and protect the public health, safety, and welfare – which is expressly spelled out in the law.[98] Second, the inspection was clearly conducted pursuant to and in furtherance of an existing business regulatory scheme, as per the Cosmetology Act and the Louisiana Administrative Code. Lastly, the regulatory scheme governing inspections by the LSBC provides a constitutionally adequate substitute for a warrant, because the applicable statutes and regulations put owners on notice that their property will be subject to periodic inspections, limited in time, place, and scope. Specifically, La. R.S. 37:575(10) properly limits the time and scope of inspections and puts owners on notice that their facilities may be inspected during hours of operations, by stating that the LSBC "shall [i]nspect during hours of operation any licensed, permitted, certified, or registered facility or school, including but not limited to pertinent

---

[95] *Id*. at 691.
[96] *Anderton*, 605 F. App'x at 344 (citing *United States v. Fort,* 248 F.3d 475, 482 (5th Cir.2001)).
[97] *Id.* (citing *Ellis v. Miss. Dept. of Health*, 344 F. App'x 43, 45 (5th Cir. 2009)).
[98] *See* LAC 46:XXXI §701 (A) and La. R.S. 37:562(B).

records, for the purpose of determining if any provisions of law governing the practice of cosmetology are being violated." Additionally, LAC 46: XXXI § 901 further limits the scope of inspections, in that it provides that: "[i]nspectors and employees of the board are entitled to enter any *premises licensed by the board*, to interview any person *present at the facility* and to examine all work records *pertaining to the cosmetology profession* during the *regular business hours of the facility*." (Emphasis added.) Because the warrantless inspection was conducted pursuant to this regulatory scheme, the warrantless searches complained of in this case were not unconstitutional.

The two-hour long detainment was also neither unlawful nor unreasonable under the circumstances.[99] Stockstill's request that Ms. Nguyen, the owner of the inspected salon, and her manicurists remain on the premises while the inspectors (1) examined their licenses (especially after two individuals ran out of the back door when the inspection began and before licensure could be verified),[100] (2) inspected cabinets and other compartments for compliance, and (3) completed an inspection report and six separate notices of violation (duplicate copies of which the inspectors are obligated, by law, to provide to the inspected licensee)[101] at the salon, was consistent with the law. That an inspector "detains" providers of cosmetology services for a reasonable amount of time necessary to allow them to carry out their inspection (and interviews) is certainly contemplated by Louisiana cosmetology law, despite Ms. Nguyen's subjective belief that her rights were violated and despite any inconvenience the inspection nay have caused her.[102] Accordingly, Ms. Nguyen's allegation that she was falsely imprisoned *because* of her race, without more, is unsupportable. Sherrie Stockstill acted under the authority of clearly established law, of

---

[99] Compare to *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009) and case cited therein, setting forth circumstances, inapplicable here, under which an administrative inspection is deemed unreasonable.
[100] *See* Inspection Report No. 228089 and Notices of Violation relative to Exotic Nails, Trial Exhibit 7.
[101] LAC 46:XXX1 §903(B).
[102] *See* Deposition of Stephen Young, R. Doc. 162-5, p. 48 (MSJ Exhibit 1, p. 48:8-13) (stating that if the inspection takes two to three hours, it is because "it takes that long to do the paperwork").

which Ms. Nguyen had notice. The false imprisonment claim against Stockstill should be dismissed, with prejudice.

### C. The individual defendants are entitled to qualified immunity.

To the extent Plaintiffs raise Section 1983 claims against the LSBC inspectors in their individual capacities, those Defendants are protected by qualified immunity. Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known."[103] The purposes of granting qualified immunity is "so that the costs and expenses of trial are avoided where the defense is dispositive"[104] and to protect public officials from disruptive "broad-ranging discovery."[105] Qualified immunity, therefore, operates as "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."[106]

Claims of qualified immunity are reviewed under a two-step analysis. The first question is whether the plaintiff has asserted a violation of a clearly established constitutional right. The court must then determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate that his actions would violate the right.[107] In order for qualified immunity to be forfeited, the unlawfulness of the defendant's conduct must be apparent in light of pre-existing law.[108] The law must give the defendant "fair warning" that his/her actions violated the plaintiff's constitutional rights.[109] If the law did not put the officer on notice that his conduct

---

[103] *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 638 (5th Cir. 2000).
[104] *Saucier v. Katz*, 533 U.S. 194, 200 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009).
[105] *Anderson v. Creighton*, 483 U.S. 635, 646, n. 6 (1987).
[106] *Saucier v. Katz*, 533 U.S. at 200-01.
[107] *Anderson*, 483 U.S. at 639.
[108] *Hope v. Pelzer*, 122 S.Ct. 2508, 2525 (2002).
[109] *Id.* at 2516.

would be "clearly unlawful under the circumstance," he is entitled to qualified immunity.[110] In other words, the court must decide whether the defendant's conduct was objectively reasonable.[111]

Based on these tenets, to overcome the defense of qualified immunity, Plaintiffs must show that the Defendants committed a constitutional violation under current law and that their actions were objectively unreasonable in light of clearly established law at the time of the actions complained of.[112] Plaintiffs cannot do this, when the inspections complained of were both reasonable and conducted in accordance with clearly-established Louisiana law.

### 1. Immunity for false imprisonment

Qualified immunity operates to shield Sherrie Stockstill from liability for purported false imprisonment for the same reasons (addressed above) that Thoa Nguyen's false imprisonment claim against Stockstill fails on its facts. That is, the provisions of the Louisiana cosmetology laws provide ample notice of inspections and supply a reasonable substitute for a warrant, and there is otherwise no indication in the law that Ms. Stockstill's actions somehow infringed on the rights of Ms. Nguyen, a salon owner and licensee (or that Ms. Stockstill knew that her actions were unreasonable in light of clearly established law). The Fifth Circuit has found inspectors to be qualifiedly immune from suit in largely similar circumstances.[113] Thus, Stockstill is entitled to qualified immunity with respect to Nguyen's claim of false imprisonment, as a matter of law.

---

[110] *Saucier*, 533 U.S. at 202.

[111] *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629 (5th Cir. 2000) (citing *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997)).

[112] *Ellis v. Mississippi Dep't of Health*, 344 F. App'x 43, 45 (5th Cir. 2009).

[113] See, *Beck, supra*, (where the court affirmed in part the lower court's summary judgment and found that a staff investigator was entitled to qualified immunity for his warrantless search of a dentist's office, where the inspection was conducted pursuant to two coexisting regulatory schemes which subjected records and documents in dental offices to on-site inspections), and *Ellis, supra* (where the court held that state inspectors were entitled to qualified immunity against the owners of an inspected child care facility based on statutes that limited the scope of inspections and provided notice to licensed facilities of possible inspections).

### 2. Immunity for racial discrimination

This Court has previously ruled that qualified immunity would not prevent an award of prospective injunctive relief against Defendants (R. Doc. 63). However, Plaintiffs have also alleged that they are entitled to attorneys' fees under Section 1988. In an abundance of caution and to the extent Plaintiffs' request for damages/attorneys' fees could be treated as a request for money damages, the individual Defendants also assert that they are entitled to qualified immunity as to such request. As addressed above, any inspections conducted by them were done in accordance with an existing business regulatory scheme that 1) served a substantial government interest, 2) advised nail salon owners that the searches were made pursuant to the law and 3) properly defined the scope of such searches. Those inspections were not in themselves unconstitutional. Further, as previously established, there is no evidence that any of the conduct complained of – whether related to inspections, issuance of violations, fines or administrative hearings – amounts to a violation of the Equal Protection Clause. Plaintiffs, therefore, cannot meet their burden to show that the individual Defendants violated a clearly established constitutional right, as would be necessary to overcome their qualified immunity.

### D.  The LSBC Is Not Liable under Section 1983.

The LSBC respectfully disagrees that it is not entitled to Eleventh Amendment immunity, (as per the Court's prior ruling) and incorporate by reference the arguments made in its Motion to Dismiss, asserting such immunity.  (R. Doc. 57.) However, even if the LSBC is not immune from suit and is a "person", and not a state agency or arm of the state under the law, Plaintiffs' Section 1983 claims against the LSBC should still be dismissed.

### 1.  The LSBC is not vicariously liable for its employees' actions.

It is well-settled that a government entity (as employer) may be liable only for acts for which it is actually responsible and cannot be held liable under Section 1983 for the tortious

conduct of its employees under a theory of *respondeat superior*.[114] In the hallmark case of *Monell v. Dep't of Soc. Servs. of City of New York*, the Supreme Court explained that Congress did not intend for governmental entities to be held liable for purposes of Section 1983 *unless* an action pursuant to *official* policy or custom of some nature caused a constitutional tort.[115] In fact, the Fifth Circuit makes it clear that "it is firmly established that individual liability under § 1983 may not be predicated on the vicarious liability doctrine of *respondeat superior*."[116] Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under Section 1983."[117] Relying on these principles, the Fifth Circuit routinely dismisses claims brought under Section 1983 against government entities that are predicated upon theories of vicarious liability and *respondeat superior*.[118]

In this case, Plaintiffs have alleged that the LSBC is vicariously liable for the conduct of its employees, i.e., its inspectors. Plaintiffs cannot prove that the single exception to vicarious liability, requiring direct action by the LSBC, through a policy or custom that *causes* an alleged deprivation of a federally-protected right, applies under the facts of this case.[119]  Plaintiffs have failed to provide proof of any LSBC policy or custom that amounts to, directs, or sanctions, discrimination by the LSBC inspectors or lawyer against salon owners based on race with respect to inspections, violations, fines, or hearings. Even if such a policy or custom were established, Plaintiffs have not provided any competent evidence proving a constitutional violation by the

---

[114] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997); See also *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).

[115] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

[116] See *Coleman*, 113 F.3d at 534. (emphasis added).

[117] *Id.*

[118] See e.g., *Pastorek v. Trail*, 248 F.3d 1140 (5th Cir. 2001) (upholding summary judgment dismissing Section 1983 claims against an individual defendant); and *Coleman, supra* (reversing the trial court's denial of Section 1983 defendants' motion summary judgment raising qualified immunity).

[119] Because vicarious liability does not apply to Section 1983 claims, claimants asserting claims against a municipality must show deprivation of a federally protected right caused by action taken pursuant to an *official* municipal policy/custom. See *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

28

Defendants on account of race, as previously discussed. Therefore, the LSBC cannot be liable for its inspectors and lawyer's actions under the circumstances of this case.

### 2. The LSBC is not vicariously liable under Section 1983 for the conduct of independent contractors.

Without proof of liability by Ms. Cangelosi, there can be no vicarious liability of the LSBC related to her conduct. The Court previously found that Ms. Cangelosi was immune from liability as to the claims brought by Thoa Nguyen, Hien Hoang and Uan Pham. Though the Court found no immunity as to Mai Nguyen's claim against Cangelosi, Mai Nguyen, like the other Plaintiffs, cannot prevail on her race discrimination claims against Ms. Cangelosi. In any event, the actions of a contracted agent cannot impute liability on a principal. The relationship between the LSBC and Cangelosi is even more attenuated than it is with the LSBC's inspectors, where Ms. Cangelosi is not an employee, but rather, an independent contractor of the LSBC.[120] Under Louisiana law, the principal (or hirer or employer) is generally not liable for the negligent acts or omissions of an independent contractor.[121] The only exceptions to this rule are inapplicable here.[122] Federal courts in this Circuit have declined to hold clients liable for their attorneys' conduct because attorneys are typically considered independent contractors rather than "employees" of the client.[123]

As independent contractor of the LSBC, Ms. Cangelosi enjoys discretion and autonomy regarding the day-to-day details of her representation of the LSBC, and is not subject to the LSBC's control regarding those details. Plaintiffs have offered no evidence to contest Ms.

---

[120] *See* Cangelosi Contract for Professional Services, R. Doc. 149-12 and 149-13.
[121] *Ukudi v. McMoran Oil & Gas, L.L.C.*, 587 F. App'x 119, 122 (5th Cir. 2014).
[122] The limited exceptions apply when "(1) the liability arises from ultra-hazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts."*Ukudi*, 587 F. App'x at 122.
[123] See e.g., *Guthrie v. Buckley*, 79 F. App'x 637, 639 (5th Cir. 2003) and *Spears v. Louisiana*, *Spears v. Louisiana*, 767 F. Supp. 2d 629, 647-48 (M.D. La. 2011).

Cangelosi's status as a contracting attorney. Under Section 1983, the LSBC cannot be vicariously liable for any tortious conduct whatsoever of its contracting attorney.

### 3. Plaintiffs cannot show Section 1983 liability by the LSBC for alleged failure to train or supervise.

Plaintiffs claim that the LSBC is independently liable to them for its alleged failure to train, supervise, and oversee its inspectors and attorney. Only official policies and practices amounting to deliberate indifference with respect to training, supervision, and/or hiring may give rise to Section 1983 liability.[124] Specifically, to establish a claim under Section 1983 for failure to train or supervise, a plaintiff must show: (1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to "deliberate indifference."[125] To satisfy the "deliberate indifference" prong, a plaintiff must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in the constitutional violation.[126] The plaintiff must demonstrate a direct causal link between the government action and the deprivation of federal rights.[127] Lesser standards of fault and causation would impermissibly result in de facto *respondeat superior* liability.[128]

None of the three elements necessary to maintain this claim against the LSBC can be met because Plaintiffs have failed to adduce any evidence of direct liability by the LSBC's for alleged failure to train, supervise, or oversee, the individual Defendants. At a minimum, the claim fails under the first two elements of the cause of action: failure to train and causation. First, there is no

---

[124] See *City of Canton v. Harris*, 489 U.S. 378, 380 (1989).
[125] See *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).
[126] See *id.*; and *Okon v. Harris Cty. Hosp. Dist.*, 426 F. App'x 312, 319 (5th Cir. 2011).
[127] *Id.*
[128] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994).

1468174.v1

competent evidence in the record of a failure to train the inspectors. In fact, the opposite is true,[129]

notwithstanding Plaintiffs' criticism of the source and frequency of the trainings and/or the manner

in which the inspectors are trained. There is also no evidence of an LSBC policy, rule, or directive,

whether oral or written, to target or single out Asian nail salons for inspections – because none

exists. As to the alleged failure to train or supervise Cangelosi, the LSBC categorically denies that

it has the authority and/or duty to train, supervise or oversee its contracting/advising attorney.

Even assuming (without admitting) that the LSBC has failed to train its inspectors and that

it can or should train or supervise Cangelosi, Plaintiffs' inability to prove discrimination based

upon race, is fatal to this claim; and there can be no "causation" between an alleged failure to train

and the violation of a constitutional right without proof of the underlying violation.

**D.**     **Margaret Keller should be dismissed as a defendant, as no claims remain against her.**

The Court previously dismissed the false imprisonment claim against Ms. Keller (R. Doc.

63). None of the remaining four Plaintiffs has alleged any misconduct by Keller that would support

a claim of racial discrimination – or any claim at all, for that matter. The one plaintiff who made

such allegations against Keller, Ms. Hanh Hoang, was recently dismissed.[130] Further, while it was

confirmed, during discovery, that Margaret Keller accompanied Sherrie Stockstill on the third of

three inspections of Magic Nails,[131] Hien Hoang has made no allegations or showing that Margaret

Keller's conduct on that day was improper. Hien Hoang's allegations center instead around

---

[129] The inspectors receive training that is specific to cosmetology regulations (*see* Trial Exhibits 83, 84, 85, 86; Deposition of Stephen Young, R. Doc. 162-5, *et seq.* p. 21:11-23; Margaret Keller Deposition pp. 39-40 (R. Doc. 162-8, p. 51-52), and further receive training through yearly (state-mandated) tests relating to rules and laws, discrimination, and how to work with others in the workplace. Deposition of Margaret Keller, R. Doc. 162-8, pp. 48-50 (MSJ Exhibit 70, pp. 35-37).
[130] R. Doc. 1-1 ¶ 9 (referencing Keller) and dismissal of Hanh Hoang d/b/a Aloha Nails #2 (R. Doc. 146).
[131] *See* Trial Exhibit 18 (notice of violation and inspection report dated May 3, 2013 relating to Magic Nails).

Stockstill's initial inspection of Magic Nails on March 22, 2012.[132]  He does not allege that Margaret was one of the inspectors who inspected his salon on that day.  While he conclusively alleges that Stockstill returned two additional times and had the same demeanor each time, he states nothing else about those inspections and does not once mention Keller in any of his allegations of fact.[133] Because none of the remaining Plaintiffs' allegations are directed to Margaret Keller, as are none of the remaining claims, she should be dismissed from this suit.

## III.  CONCLUSION

The lack of competent (and, in some cases, any) evidence supporting Plaintiffs' Section 1983 claim for racial discrimination and related false imprisonment by Sherrie Stockstill, Margaret Keller, Celia Cangelosi, and the LSBC, compels dismissal of all of Plaintiffs' claims against the Defendants.

Respectfully submitted,

JEFF LANDRY
ATTORNEY GENERAL

**/s Katia D. Bowman**
By:  Thomas R. Peak, Bar # 14300
Katia Desrouleaux Bowman, Bar #32700
Special Assistant Attorneys General
TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.
450 LAUREL STREET, 8TH FLOOR (70801)
P.O. BOX 2471
BATON ROUGE, LA 70821-2471
Telephone:  (225) 387-3221
Facsimile:  (225) 346-8049
Email:  thomas.peak@taylorporter.com
           katia.bowman@taylorporter.com
*Attorneys for Louisiana State Board of Cosmetology;*
*Sherrie Stockstill and Margaret Keller*

---

[132] R. Doc. 1-1 ¶10 and Deposition of Hien Hoang, Vol. 2, R. Doc. 162-5, p. 360 (MSJ Exhibit 14, p. 116:15-19) (admitting that the March 2012 inspection was the very first inspection that the LSBC had ever made of Magic Nails).
[133] The conclusory allegation/conclusion of law in the Amended Complaint that "… Ms. Cangelosi knowingly colluded with Ms. Sherrie Stockstill, Margaret Keller, and other close-by inspectors…" is insufficient (even more so now that none of the remaining plaintiffs have alleged any facts against her) (R. Doc. 44 p.8), and there is no competent evidence of such "collusion" in the record in any case. *See* Cangelosi MSJs, adopted herein by reference.

1468174.v1

<u>CERTIFICATE</u>

The undersigned hereby certifies that this pleading has been electronically filed through the Court's CM/ECF system and that it is reasonably believed that service copies of same will be automatically transmitted to all counsel registered through that system.

Baton Rouge, Louisiana, this 6th day of January, 2017.


**s/ Katia D. Bowman**
Katia Desrouleaux Bowman