UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| THOA T. NGUYEN, ET AL.<br>     Plaintiffs; | Civil Case No.: 3:14-CV-00080-BAJ-RLB |
| Versus | JUDGE: BRIAN A. JACKSON |
| LOUISIANA STATE BOARD OF COSMETOLOGY, ET AL.<br>     Defendants. | MAGISTRATE: RICHARD A. BOURGEOIS, JR. |

## PLAINTIFFS' TRIAL BRIEF

MAY IT PLEASE THE COURT:

Plaintiffs, Thoa Nguyen, Hien Hoang, Uan Pham, and Mai Nguyen, submit this trial brief in preparation for trial.

### I. BACKGROUND

Plaintiffs are past and present Asian-Americans (specifically Vietnamese-American) nail salon owners in Louisiana who have been harassed, intimidated, falsely imprisoned, arbitrarily discriminated against, and racially profiled based on their race, ethnicity, or national origin by the Louisiana State Board of Cosmetology (Defendant LSBC), its inspectors, employees, and its attorney, Defendant Celia Cangleosi (Defendant Cangelosi). The plaintiffs are mostly comprised of first generation immigrants who have limited English-speaking and -writing skills. Despite these deficiencies, they tirelessly fought for the "American Dream" and became successful small business entrepreneurs in the specialized area of manicuring. But within the last

several years, they have faced challenges not of their own creation. Three have lost profits and one has closed down her shop.

Since the installments of Chairman Frances Hand, Executive Director Steve Young, Complaint Counsel Celia Cangelosi, and the various inspectors—in particular Sherrie Stockstill and Margaret Keller—there has been a substantial increase in the number of inspections on and citations against Vietnamese- and Asian-owned salons. Even though Vietnamese-owned salons, which include the Plaintiffs, make up about 9% of all the salons under the jurisdiction of the LSBC, they paid 80.1%, 89.2% and 91% of all LSBC fines for the years 2011, 2012, and 2013 respectively. During store inspections, LSBC inspectors were disrespectful, hateful, demeaning, bashful, unprofessional and authoritative with storeowners and their employees, family, friends, and patrons. Plaintiff Thoa Nguyen was falsely imprisoned for two hours as a result of Defendant Sherrie Stockstill's unconstitutional detention. Furthermore, at the LSBC board meetings, Plaintiff Hien Hoang felt pressured to sign and pay for consent agreements by Defendant Cangleosi in order to avoid further costs of litigation with the Board. Defendant Cangelosi overstepped her role as complaint counsel when she took on multiple roles in dealing with the Plaintiffs. Defendant Cangelosi screened cases, recommended charges and consent agreements, acted as the point of contact to the Plaintiffs during consent agreement negotiations (as Board attorney), prosecuted cases (as Board complaint counsel), advised the Board on legal matters (as Board adviser), inspected salons through her legal secretary (as Board Inspector), and in at least one instance, acted as a subordinate presiding officer of the Board (as Board member). Lastly, Plaintiffs have been subjected to heightened and disproportionate inspections and citations at the hands

of the LSBC, its inspectors, Defendant Cangelosi and her staff, Terri Clark. Plaintiff Mai Nguyen bought over a salon from an unrelated previous owner and was in the process of renovation, but was shut down for three months by the Defendants after Defendants suspected her of a fraudulent transfer of a business. The only basis was because Plaintiff and previous owner had the same Vietnamese last name. Defendant Cangelosi twice personally funded an undercover investigation using her legal secretary into Plaintiff Mai Nguyen's shop. With no further extrajudicial remedies, the Plaintiffs now seek monetary relief for past injuries and prospective injunctive relief to enjoin the LSBC from future arbitrary discrimination and racial profiling of the Vietnamese-American salon owners based solely on their ethnicity.

## II. THE LSBC IS NOT AN ARM OF THE STATE

This Court previously ruled that "a suit against the LSBC is not, in effect, a suit against the State of Louisiana" which shows this Court's unwillingness to consider the LSBC an agency or arm of the state. (*See* R. Doc. 63 at pp. 11). There has been no writ or appeal to this Court's ruling. Therefore, it is undisputed the LSBC is not an arm or agency of the State of Louisiana.

## III. PLAINTIFFS CAN SHOW EQUAL PROTECTION VIOLATION BY THE LSBC.

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." In addition, the Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To state a claim of racial discrimination under the Equal

Protection Clause and Section 1983, the plaintiff "must allege and prove that [(1) he or she] received treatment different from that received by similarly situated individuals and that [(2)] the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir.2004), quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir.2001)). However, "there is no precise formula to determine whether an individual is similarly situated to comparators" and "similarly situated" inquiry "depend[s] substantially on the facts and context of the case," "is case-specific," and "requires [the court] to consider the "full variety of factors that an objectively reasonable . . . decision maker would have found relevant in making the challenged decision." *Lewis v. Ascension Parish School Bd.,* 72 F.Supp.3d 648, 665 (M.D. La. 2014); *affirmed*, 806 F.3d 344 (5th Cir. 2015); *cert. denied* , 136 S.Ct. 1662, (2016).

**A. All salons, including hair salons, are appropriate comparators in this case.**

The Defendants LSBC argue that the appropriate comparators in this case should be only nail salons and not hair salons. Plaintiffs wholehearted disagree and believe the appropriate comparators should be all non-Asian salon owners—encompassing all salons within the purview of the LSBC. As the Defendants have exhaustively pointed out, the "express purpose of the [Louisiana Cosmetology Act] is to promote, preserve, and protect the public health, safety, and welfare by and through the effective control and regulation of the practice of *cosmetology."* La R.S. 37:562(B) (emphasis added). In addition, it is concerned with "persons . . . permitted to engage in the practice of *cosmetology*." La R.S. 37:562(A) (emphasis added). Nowhere in the Cosmetology Act does it state that the LSBC will only regulate the practice of *"manicuring."* But this is exactly what the LSBC has been doing for more than a decade. Accordingly to Executive Director Steve Young,

there are approximately 7,500 total salons under the direct supervision of the LSBC; however, only approximately 850-900 of those are manicuring salons. *See* Exhibit 1, p. 35:14-17. With simple math, manicuring salons make up less than 12%. And in Steve Young's own estimation, around 80% of the total manicuring salons are owned by Vietnamese-Americans. *Id.* at p. 35:24 through 36:6. Therefore, in totality, Vietnamese-owned salons make up about 9% of all the salons under the jurisdiction of the LSBC. However, in 2011, Vietnamese-Americans paid 80.1% of all LSBC fines.[1] In 2012, Vietnamese-Americans paid 89.2% of all LSBC fines.[2] In 2013, Vietnamese-Americans paid 91% of all LSBC fines.[3] The Defendants' contention that the only comparators should be manicuring salons is misleading and unpractical. The LSBC has the authority and mandate to regulate **ALL** salons (esthetics, cosmetology, manicuring, etc.), not just manicuring. (emphasis added). The exclusion of the other disciplines would be unjust and prejudicial.

Furthermore, the other non-manicuring salons are "similarly situated" as manicuring salons with respect to same procedures for licensing, inspections, violations, and administrative hearings. As attested by Steve Young and the inspectors, LSBC inspectors are supposed to conduct bi-yearly inspections of all salons if possible. *See* Exhibit 1, p. 36:13-20. Each inspector is responsible for approximately 650 salons, of all types. *Id.* at 36:7-12. The same standard Inspection Report and Notice of Violation forms are used for all salons. *See* Plaintiffs' Exhibit 3. Salons that are on probation are inspected quarterly or bimonthly. *See* Defendants Exhibit 2: LSBC's Supplemental Response to RFP No. 7. The forms are processed in the same manner through weekly and

---

[1] R. Doc. 114-8, 114-9
[2] *Id.*
[3] *Id.*

monthly updates with the LSBC office. *See* Plaintiffs' Exhibit 1: Steve Young; *Also see* Plaintiffs Exhibit 2: Margaret Keller. All notices of violations are mailed to the LSBC office and forwarded to Defendant Celia Cangelosi for further action. *See* Plaintiffs' Exhibit 6: Cangelosi's Deposition. Unresolved notices against salon owners are automatically set for an administrative "Rule to Show Cause" hearing. *Id.* Plaintiffs' entire discrimination lawsuit is premised on the LSBC's intentional and disproportionate targeting of Asian-American nail salon owners through delayed license application approvals, heightened and frequent inspections, citations, fines, and disciplinary hearings. All salons under the control of the LSBC are "similarly situated" as the Plaintiffs in this instant matter since they all expected to follow the same procedural steps. Therefore, all non-Asian salons (including hair, nail, and facial) are absolutely appropriate comparators in this race discrimination and equal protection lawsuit against the LSBC.

**B. Using non-Asian manicurists as comparators will still show disparate treatment and impact against Asian- and Vietnamese-Americans.**

Data collected from the LSBC's own fines show that non-Asian and non-Vietnamese-Americans were fined only a total of $125.00 in 2011, $1,175.00 in 2012, $1,800.00 in 2013, and $0 in 2014. *See* attached Exhibit 1. To make matters worst, from 2011 to 2014, there were a total of only 21 non-Asian and non-Vietnamese violators hit with manicuring fines. While compared to Asian- and Vietnamese-Americans manicurists, there were a total of over 364 violators with a total fine cost of $51,826.75. *See* attached Exhibit 2. Therefore, even if non-Asian manicuring salons/individuals were to be applied as the appropriate comparators, Plaintiffs can still show by a preponderance of the evidence that there is race discrimination by the LSBC and Defendants.

**C. There is strong evidence of race-motivated disparagement treatment and impact**

Plaintiffs would like to point the Court's attention to the landmark case, *Yick Wo v. Hopkins.* 118 U.S. 356 (1886). This case involved an 1880 ordinance passed by the city of San Francisco which required all wooden laundry buildings to hold a permit issued by the city's Board of Supervisors. Although workers of Chinese descent operated 89 percent of the city's laundry businesses, not a single Chinese owner was granted a permit. Plaintiffs each owned laundry businesses for many years, but were denied permits after the 1880 ordinance was passed. The Court unanimously found that, despite the impartial wording of the law, its biased enforcement violated the Equal Protection Clause. According to the Court, even if the law is impartial on its face, "if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." *Id.* at 373. The kind of biased enforcement experienced by the plaintiffs, the Court concluded, amounted to "a practical denial by the State of that equal protection of the law" and therefore violated the provision of the Fourteenth Amendment. *Id.* Similarly, in this case, Plaintiffs are not contesting that the laws and regulations of the LSBC are discriminatory on its face. Rather, Plaintiffs are victims of illegal race discrimination in the prejudicial administration of such regulatory schemes at the "unequal hand" of the LSBC.

First, as stated earlier, from 2004-2012, the LSBC's total means of financing has been accounted by fees and self-generated revenues.[4] This system of finance has not

---
[4] R. Doc. 19-1; R. Doc. 63 at p. 13

change since 2012. Even though Vietnamese-owned salons make up about 9% of the total salons under the authority of the LSBC, in 2011, Vietnamese-Americans paid 80.1% of all LSBC fines.[5] In 2012, Vietnamese-Americans paid 89.2% of all LSBC fines.[6] In 2013, Vietnamese-Americans paid 91% of all LSBC fines.[7] Furthermore, Vietnamese-owned salons pays on average $850 in fines while non-Vietnamese owned salons only pay $25 in fines. *See* Plaintiffs' Exhibit 5, p. 35; *Also see* R. Doc. 114-8, 114-9. In short, Vietnamese-owned salons pay about 3,000 percent more than non-Vietnamese-owned salon with regards to fine. *See* Plaintiffs Exhibit 5, p. 35. Executive Director Steve Young acknowledges this fact when asked by Mr. Anh "Joseph" Cao during his deposition.

> Q. You were present or around many board hearings; is that correct?
>
> A. Yes, sir.
>
> Q. Let me ask you a question. During those hearings, what is the group of people you see there the most?
>
> Q. Are they Vietnamese-American?
>
> A. Being fined with violations?
>
> Q. Correct.
>
> A. Yes, they are.
>
> Q. What percentage?
>
> A. Oh, probably 90 percent maybe.[8]

---

[5] R. Doc. 114-8, 114-9
[6] *Id.*
[7] *Id.*
[8] Plaintiffs Exhibit 1: Steve Young's Deposition, p. 127-128.

Even though the Defendants contend the LSBC does not classify licensees or track fines based on race or ethnicity[9], Mr. Young confidently stated the exact percentage of Vietnamese-American who pay the revenues to keep the LSBC's doors open. As the head of the LSBC, Mr. Young is not color-blind to whom he has been collecting fines and revenues from. He knew exactly his complaint counsel and inspectors were intentionally targeting Vietnamese-Americans more than other ethnicities.

In addition, Defendant Sherrie Stockstill made racial remarks against Vietnamese-owned salons during her deposition. Plaintiffs' counsel, Mr. Tu Thomas Hoang, first asked who does Defendant Stockstill normally cite? She responded, "To the Asian-American—that's---now one thing about them." She stops midway and stated she didn't know which specific group of the Asian-Americans. When later pushed for an answer by Mr. Hoang what is the most predominantly translated language used at hearings, Defendant Stockstill answered, "Well, it's y'all's language."[10] Later on, Mr. Hoang asked a similar question on what is usually the ethnicity of the interpreter at these hearings? Defendant Stockstill answered, "Your culture. The interpreter is for . . . Vietnamese."[11]

Defendant Sherrie Stockstill also made racist blanket accusations against Vietnamese-owned salons. She admits that after the waxing paraphernalia memo was released in 2007, there has been an increase in citations and violations against nail salons who have waxing equipment in their stores.[12] When Mr. Hoang asked her why she thinks there has been an increase, Defendant Stockstill complains that "they don't want to

---

[9] Defendants' Exhibit 1, p. 170:22 through 171:1; p. 35:24 through 36:6.
[10] Plaintiffs'' Exhibit 7: Stockstill's Deposition, p. 65.
[11] *Id.* at 101.
[12] *Id.* at 66.

listen" and makes condescending statements on the level of English proficiency of Vietnamese owners. [13] She makes a blanket assumption that all Vietnamese owners can read, write, and speak the English language.[14] Probably due to her lack of formal training by the LSBC, Defendant Margaret Keller and Sherrie Stockstill wrongfully believe store owners who sign the Inspection Report and Notice of Violations given to them after a violation inspection are admitting to their guilt.[15] She corroborates Steve Young's statement by admitting when she attends administrative hearings, she personally witnessed the makeup of the group of alleged violators were Vietnamese[16] To make matters worst, she outright assumes "ALL manicuring salons hire unlicensed . . . [m]ore Vietnamese are hiring unlicensed manicurists."[17] She shows her true discriminatory intent when she responded that she very seldom cite a cosmetology salon owned by a Caucasian who would hire an unlicensed cosmetologist.[18] She even mentioned she would give these Caucasian owners a chance to correct it before she will write them up before trying to correct herself.[19] Vietnamese-owned salons are not even given such a warning.

As for the discriminatory enforcement of a facially race-neutral provision, Plaintiffs point the Court's attention to one such LSBC regulation—violation for simple possession of waxing paraphernalia. On October 2, 2007, an unsigned written communication was prepared by "Tisha Butler" as informed by Sherrie Morris and Jackie Burdette, that states waxing paraphernalia is disallowed in manicuring salons and

---

[13] I*d.* at 67.
[14] *Id.*
[15] Plaintiffs' Exhibit 2: Keller's Deposition, pp. 63-64; Plaintiffs Exhibit 7: Stockstill's Deposition, pp. 147-149.
[16] *Id.* at 105
[17] *Id.* at 106
[18] Id.
[19] *Id.*

warrants immediate issuance of an administrative hearing violation.[20] However, there is no evidence that the LSBC Board Members had made such a vote prior to this letter.[21] In addition, Chairwoman Frances Hand stated there is no law stating that simply possessing waxing paraphernalia in a nail salon is a violation.[22] Ms. Hand has no knowledge that the LSBC promulgated any rules or any regulations that would make it illegal for a manicuring salon to possess waxing equipment.[23] Even Defendant Celia Cangelosi, as complaint counsel, is not familiar with a rule that states waxing equipment is not allowed in manicuring salons.[24] Defendant Cangelosi further clarified and stated that based on her knowledge of Title 37 she does not think there is a statute that says that only the possession of waxing equipment is against the law.[25] Plaintiffs agree with Defendants Hand and Cangelosi that there are no laws, statutes, or regulations promulgated by the State of Louisiana or by the LSBC that forbids simple possession waxing paraphernalia in a nail salon. Even though this is the case, all of Plaintiffs were still cited for simply possessing waxing paraphernalia, which automatically warrants an administrative hearing violation—the highest possible violation burden on a salon owner. There is no warning or grace-period to correct this. The enactment of this so-called resolution or regulation is discriminatory only to one segment of the LSBC's salons—Vietnamese nail salons. This memo has generated a spike in violations against Vietnamese-Americans and revenue for the LSBC.[26]

---

[20] Defendants' Exhibit 4: Waxing Memo
[21] Plaintiffs' Exhibit 4: Board Monthly Meetings from August-October 2007.
[22] Plaintiff's Exhibit 5: Frances Hand's Deposition, p. 27.
[23] *Id.*
[24] Plaintiffs' Exhibit 6: Celia Cangelosi's Deposition, p. 12-13
[25] *Id.* at 17.
[26] Plaintiffs'' Exhibit 7: Stockstill's Deposition, p. 66.

## IV. THOA NGUYEN CAN SHOW FALSE IMPRISONMENT BY SHERRIE STOCKSTILL

The elements of false imprisonment are: (1) detention of a person; and (2) the unlawfulness of such detention. *Tabora v. City of Kenner*, 94-613 (La. App. 5 Cir. 1/18/95). Plaintiff believes it is undisputed between all parties that Thoa Nguyen was detained for approximately two hours against her will by defendant Sherri Stockstill. Defendant spends a lot of time making arguments justifying the warrantless search that Sherri Stockstill executed, however, the search is not at issue in the false imprisonment claim. However, detaining someone and taking away one's liberty is tantamount to an arrest. Thoa Nguyen was not under investigation for criminal activity. She was not suspected of criminal activity. The inspectors were allegedly conducting an investigation of which if there were violations, there would be potential fines, not jail time. Defendants have failed to cite under what authority does the LSBC operated to have restrained plaintiff Thoa Nguyen's personal liberty and freedom of movement.

## V. THE INDIVIDUALS DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

This Court previously ruled that "a suit against the LSBC is not, in effect, a suit against the State of Louisiana" which shows this Court's unwillingness to consider the LSBC an agency or arm of the state. (*See* R. Doc. 63 at pp. 11). Defendants claim that "[g]overnment officials performing discretionary functions are protected from civil liability..." However, this court has already stated the LSBC is not an agency or arm of the state, and thus, LSBC employees should not be considered "government officials". (*Id*.) This Court distinguished the LSBC's official designation as a professional association from "state boards, agencies, and commissions, who must deposit all money

received immediately in the state treasury." (*See* R. Doc. 63 at p. 11; *see also* La. Const. Art. VII § 9). Additionally, this Honorable Court emphasized, "...from 2004 through 2013, the LSBC's total means of financing has been accounted for by fees and self-generated revenues" which furthered the distinction between the LSBC and a true government agency. (*See* R. Doc. 19-1; *see also* R. Doc. 63 at pp 13). Defendants do not have the correct status as a government official to invoke a defense of immunity, whether qualified or absolute, because this Court has already deemed the institution of which they are employed, the LSBC, as not being an agency or arm of the State. (*See* R. Doc. 63 at pp. 11).

### a. False Imprisonment

Sherri Stockstill's immunity claim fails for the same reason as addressed above, mainly that the LSBC has been deemed to not be an agency or arm of the State which would disqualify defendant Stockstill from being considered a government official. Additionally, despite defendant's interpretation of defendant Stockstill's actions as somehow not infringing on the rights of Ms. Nguyen, plaintiff Thoa Nguyen clearly believes being held against her will by someone that is not an agent or representative of the State is an action that infringes on her rights. Furthermore, the defendants have produced no evidence or documentation that states that an owner or manager of a salon is not free to leave during an inspection. Defendant Stockstill took it upon herself to intimidate plaintiff Thoa Nguyen and her employees and did not allow them to leave the premises for approximately two hours, that is a case of false imprisonment.

Last, defendant compares the instant case with *Beck v. Texas State Bd. of Examiners*. (*See* R. Doc. 158-4 at pp. 31). However, in *Beck*, the Court recognized the Texas State Board of Examiners as a state agency, whereas in the instant case, this Court has already deemed the Louisiana State Board of Cosmetology is not an agency or arm of the State. (*See* R. Doc. 63 at pp. 11). As such, the comparison of *Beck* and the instant case does not support defendant's case, quite the contrary.

### b. Racial Discrimination

Defendants are not government officials and thus cannot invoke immunity as a defense. For the reasons stated above and for the reasons already set forth by this Court that the LSBC is not an agency or arm of the State. (*See* R. Doc. 63 at pp. 11). Additionally, defendant states that there is "no evidence that any of the conduct complained of - whether related to inspections, issuance of violations, fines or administrative hearings - amounts to a violation of the Equal Protection Clause." (*See* R. Doc. 158-4 at pp. 32). However, the following data regarding fines makes that claim a question of material fact:

1. From 2004 through 2013, the LSBC's total means of financing has been accounted for by fees and self-generated revenues. (*See* R. Doc. 19-1; R. Doc. 63 at p. 13).

2. As of 2013, The LSBC oversees approximately 5,185 cosmetology salons of which approximately 500 (9.6%) are Vietnamese-American owned nail salons. (*See* R. Doc. 114-2).

3. In 2011, Vietnamese-Americans paid 80.1% of all LSBC fines. (*See* R. Doc. 114-8, 114-9).

4. In 2012, Vietnamese-Americans paid 89.2% of all LSBC fines. *Id*.

5. In 2013, Vietnamese-Americans paid 91% of all LSBC fines. *Id*.

## VI. THE LSBC IS LIABLE UNDER SECTION 1983.

### a. The LSBC is vicariously liable for its employee's actions

Plaintiffs standby and agree with this Court's ruling that the LSBC is not a government entity. (*See* R. Doc. 63 at pp. 11). Thus the arguments that defendants make are moot as they all require the assumption that the LSBC is a government entity, an assumption the defendant acknowledges is not agreeable with this Court.

### b. The LSBC is vicariously liable under Section 1983 for the conduct of independent contractors

Plaintiffs will respectfully abide by the ruling of the court before where defendant Cangelosi's motion for summary judgment was denied and plaintiff will await this Court's ruling on defendant LSBC's present motion for summary judgment. Additionally, the nature of defendant Cangelosi's employment and her many roles at the LSBC is a question of material fact as this Court has already previously found. As defendant Cangelosi has identified herself as complaint counsel, board's attorney, board's legal advisor, and on at least one occasion, defendant Cangelosi was a presiding officer at a hearing while she was an advisor at the same time. (Exhibit 6 at pp. 54: Celia Cangelosi's Deposition). The status of defendant Cangelosi as an independent contractor or if she is in reality treated as an employee of the LSBC is a question of material fact.

Also Ms. Cangelosi has overstepped her boundaries as a complaint counsel by approving and sanctioning her legal secretary, Terri Clark, to Mai Nguyen's store for investigatory purposes can also show liability of the LSBC. This overstepping of their roles also extend to Defendants Sherrie Stockstill and Margaret Keller for purposefully targeting Vietnamese-American individuals and salon owners for alleged violations.

### c. Defendants are liable under Section 1983 liability for failure to train or supervise

To establish a claim under Section 1983 for failure to train or supervise, a plaintiff must show: (1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to "deliberate indifference." *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Defendant states that inspectors receive on the job training, which may last up to one year in paragraph 15 of defendant's Statement of Uncontested Material Facts; however, Sherri Stockstill stated that she received training from Nelma Badon for a period of about two to three weeks. (Exhibit 7 at pp. 32). Margaret Keller stated inspectors "don't really have training." (Exhibit 2 at pp. 38). Ms. Keller also stated after training, there were annual tests but the tests were for **ALL** employees and had no specific relevance toward the rules and regulations of the LSBC. (*Id*. at pp. 36-38). Sherrie Stockstill, a veteran of 25 years, corroborated Keller's statement when she stated that her last formal training was in the fall of 2015, over a year and a half after the filing

of Plaintiffs' lawsuit, February 6, 2014.[27] To make matters worst, Defendant Stockstill admits that there was no formal training or meetings before this.[28] Even at the 2015 meeting, there were no pamphlets or handouts for the inspector. Executive Director Steve does not participate in any of the training of his inspectors.[29] Furthermore, there are no records of the training besides one PowerPoint from 2001.[30]

To meet the legal standards of liability under Section 1983, plaintiff believes: (1) there has been a serious failure to train or supervise if the LSBC's most experienced inspector had a one time training that lasted two to three weeks at the beginning of her 25 year career and another inspector, Margaret Keller, admitting that inspectors "don't really have training"; (2) the causal link between the lack of training and the infringement of plaintiffs' rights is obvious, if the inspectors were provided with proper training and direction, we would not have instances of false imprisonment and the citing of violations for possessing waxing paraphernalia, which is not against any code or regulation; and (3) the lack of training, the overwhelming majority of fines coming from Vietnamese-Americans, the overwhelming majority of Vietnamese-American citizens called to defend themselves at administrative hearings, and the fact that there is no racial sensitivity training for LSBC employees all lead to a "deliberate indifference". (Exhibit 7 at pp. 117-118).

### VI. Conclusion

In conclusion, if the Court applies the appropriate comparators as all salons under the control of the LSBC then Plaintiffs show prove that the LSBC, through Steve Young,

---

[27] Plaintiffs' Exhibit 7: Sherrie Stockstill's Deposition, p. 34.
[28] *Id.*
[29] Plaintiffs' Exhibit 1: Young's Deposition, p. 14.
[30] *Id.* at 14-15.

Frances Hand, Celia Cangelosi, and Sherrie Stockstill, has revealed discriminatory intent against Vietnamese-Americans not only in their words and actions, but also with the data provided by the LSBC regarding the unequal fines. Even if the appropriate comparators are non-Asian manicuring salons, Plaintiffs can still show that the fines were imposed excessively against Asian- and Vietnnamese-Americans. Furthermore, Plaintiffs will show Defendents Celia Cangelosi, Sherrie Stockstill, and Maragaret Keller cannot claim absolute or qualified immunity. Thoa Nguyen can show she was falsely imprisoned by Sherrie Stockstill. Lastly, the LSBC violated Mai T. Nguyen's constitutional rights under Section 1981.

| CERTIFICATE OF SERVICE | RESPECTFULLY SUBMITTED: |
|---|---|
| I do hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.<br><br>/s/ Tu Thomas Hoang | /s/ Tu Thomas Hoang<br>Anh "Joseph" Cao (Bar No. 26836)<br>Tu Thomas Hoang (Bar No. 35494)<br>Counsels of Record<br>**Cao Law Firm**<br>2439 Manhattan Blvd, Suite 302<br>Harvey, Louisiana 70058<br>504.367.5001<br>504.684.1231 (fax)<br>Email: acao@loyno.edu<br>Email: thoang@caolawfirm.com |